**BROOKLYN LAW SCHOOL, Plaintiff–Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY and Aetna Life & Casualty, Defendants–Appellees.**

**No. 550, Docket 87–7527.**

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1988.

Decided June 24, 1988.

Andrew L. Frey, Washington, D.C. (Mayer, Brown & Platt, Washington, D.C., Kathryn A. Oberly, Karen L. Whitney, of counsel), for plaintiff-appellant.

Steven J. Ahmuty, New York City (Bower & Gardner, New York City, Barry G. Saretsky, Sidney Rosen, of counsel), for defendants-appellees.

Before LUMBARD, CARDAMONE, Circuit Judges, and LEISURE, District Judge.[*]

LUMBARD, Circuit Judge:

Brooklyn Law School brought suit in November 1984 in the Eastern District, under diversity jurisdiction, against Aetna Casualty and Surety Company, its insurer, to recover $315,000 in damages suffered in defending five suits prosecuted against the School, its trustees, its faculty, and its students, by William Herrmann, a former professor at the School. Herrmann brought these suits in response to bitter salary disputes with the School that culminated in academic charges against him, a faculty hearing, and his expulsion from his tenured teaching position on September 17, 1975. When Brooklyn Law School called upon Aetna to defend these actions, Aetna disclaimed any obligation to provide a defense or indemnification under Multi–Peril and Excess Indemnity (Umbrella) Policies it issued to the School.

Judge Bartels denied Brooklyn Law School's motion for summary judgment on May 29, 1987. 661 F.Supp. 445 (E.D.N.Y.

[*] Hon. Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

1987). The School now appeals as to indemnification for defense costs in only one of the law suits brought by Herrmann, *Herrmann v. Moore*, 76 Civ. 2269 (E.D.N.Y.1977), *aff'd*, 576 F.2d 453 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978), alleging conspiracy by the School, its trustees, and members of its faculty to deprive him of his civil rights, to humiliate and humble him, and cause him loss of employment and mental anguish.

On a motion for summary judgment made by the School, Judge Bartels held that the School had failed to show that it was insured against the claim in *Herrmann v. Moore* and dismissed the case. Judge Bartels found that Aetna's Umbrella policy was the only policy which could possibly afford the School coverage for the suit. The court also found that under the terms of that policy, the claims insured against were only those personal injuries resulting from an "occurrence" defined as an "accident ... which is neither expected nor intended from the standpoint of the insured." Based upon this finding, Judge Bartels reasoned that the claim made in *Herrmann v. Moore*, which alleged conspiracy to cause the harm, was not such a claim and therefore Aetna had no duty to defend and reimburse. In short, there was no liability with respect to claims which alleged that Brooklyn Law School had intentionally caused damage. We agree with the district court and affirm.

New York recognizes a broad insurer's duty to defend its insured against lawsuits, regardless of how poorly the complaint is worded, or how many claims are raised. *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984); *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974). The insurer is relieved of its obligation to defend only if there is "no possible factual or legal basis on which the insurer might eventually be held to be obligated, or the insurer can show that 'the allegations of the complaint are solely and entirely within the policy exclusions, and that the allegations, *in toto*, are not subject to any other interpretation.'" 661 F.Supp. at 449 (quot-

ing *International Paper Co.*, 35 N.Y.2d at 325, 361 N.Y.S.2d at 875, 320 N.E.2d at 621).

New York courts interpreting the meaning of an "occurrence," in policy clauses similar to those at issue here, have determined that liability coverage depends upon whether the alleged injury was intentionally caused or was an unintended, although foreseeable, result of the alleged intentional conduct. The distinction is drawn between

damages which flow directly and immediately from an intended act, thereby precluding coverage, and damages which accidently arise out of a chain of unintended though expected or foreseeable events that occurred after an intentional act. Ordinary negligence does not constitute an intention to cause damage; neither does a calculated risk amount to an expectation of damage. To deny coverage, then, the fact finder must find that the insured intended to cause damage.

*Continental Insurance Co. v. Colangione*, 107 A.D.2d 978, 979, 484 N.Y.S.2d 929, 930–31 (3d Dept.1985) (citations omitted). *See also General Accident Insurance Company of America v. Manchester*, 116 A.D.2d 790, 792, 497 N.Y.S.2d 180, 182 (3d Dept.1986).

A complaint that the insured has conspired to commit certain acts necessarily charges intentional conduct on the part of the defendant-insured. *See Federal Insurance Co. v. Cablevision Systems Development Co.*, 637 F.Supp. 1568, 1577 (E.D.N.Y.1986). It is that conduct which must be examined to determine whether the plaintiff alleges that the insured intended to cause damage or that the damage "was unexpected, unusual, and unforeseen." *Mary & Alice Ford Nursing Home Co. v. Fireman's Insurance Co. of Newark, N.J.*, 86 A.D.2d 736, 737, 446 N.Y.S.2d 599, 601 (3d Dept.), *aff'd*, 57 N.Y.2d 656, 454 N.Y.S.2d 74, 439 N.E.2d 883 (1982).

In applying this test to a claim that an employer-insured has caused emotional injuries by discharging an employee pursuant to intentional discriminatory practices, the court in *Mary & Alice Ford* held that insurance clauses identical to those at issue

here excluded potential liability from coverage because the injuries allegedly caused by the insured were:

> "neither unexpected nor unforeseen, but rather they were the direct and natural consequences of [the employer's] intentional act. Thus, if the [complainants] succeed in their action, the proof will necessarily establish that there was no accident within the meaning of the insurance policies in question and, therefore [the insurer] will not be liable to indemnify [the insured]."

*Id.*, 86 A.D.2d at 737–38, 446 N.Y.S.2d at 601.

The complaint here alleged that the School conspired intentionally to inhibit Herrmann's constitutional rights. It is replete with allegations of intentional conduct and injuries. We agree with Judge Bartels' finding that such allegations, if proven, would not give rise to a covered liability under the terms of the Umbrella Policy. Consequently, Aetna had no duty to defend the action.

Nonetheless, the School also argues that there are allegations in the complaint which, if proven, could result in the insurer's liability for damages resulting from unintentional conduct or intentional conduct producing unintentional injury. We can see no reason why the court should have imagined what is not in the complaint in order to find liability which was not intended. Herrmann's complaint may be inartfully drafted but there can be no doubt that the purpose of his action, as determined by the district court, was to hold the School liable for conspiring intentionally to inhibit his rights and intentionally to commit acts to deprive him of his property rights in his tenured position. Liability for injuries caused by intentional acts of the insured is expressly excluded under the Aetna insurance policy definition of "occurrence" as interpreted under New York law.

The School's final argument is that the Umbrella Policy does not unambiguously exclude coverage of liability for the "mental anguish" injury alleged by Herrmann notwithstanding the complaint's allegations regarding intent. This argument is based on the policy term "personal injury" which on its face may be read to require insurance coverage, or at least creates an ambiguity regarding the extent of insurance coverage, when a described injury is alleged to have been caused by the insured.

We do not agree with this approach. The focus of New York courts' construction of such insurance policy language has found the term "personal injury" to be a description of injuries which are covered only if such an injury arises out of an "occurrence." As we have said, this does not cover injuries from intentional acts.

In light of the consistent interpretation by the New York courts of the parameters of coverage under the insurance terms at issue in this case, we find that Herrmann's complaint against the School alleged injuries which are excluded from coverage under the Umbrella Policy. As a result, Aetna was not obligated to defend the School on Herrmann's complaint of conspiracy or to indemnify the School for any damages suffered from such a suit.

Affirmed.