**CHICAGO INSURANCE COMPANY,**
Plaintiff,

v.

**Robert P. BORSODY, Defendant.**

**No. 00 CIV. 4837(RWS).**

United States District Court,
S.D. New York.

Sept. 27, 2001.

Steinberg & Cavaliere, White Plains, NY, Kevin F. Cavaliere, of counsel, for Plaintiff.

James E. Musurca, Esq., New York City, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Robert P. Borsody ("Borsody") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., to declare that the plaintiff Chicago Insurance Company ("CIC") has an obligation under a lawyer's professional liability insurance policy to defend and indemnify him arising out of an action *Allstate Insurance Company, et ano. v. Northfield Medical Center, P.C., et al.,* Docket No. MRL–L–3228–99, pending in the Superior Court of New Jersey, Morris County (the "Allstate Action") and in connection with a cross-claim against him asserted by defendant Scott Neuner ("Neuner") in that action. CIC has also moved for summary judgment declaring the absence of any duty to defend and indemnify and for reimbursement of expenses incurred in connection with its defense of the Neuner cross-claim. For the reasons set forth below, the CIC motion is granted, and the Borsody motion is denied.

This coverage dispute between a lawyer and the company which issued a professional liability policy turns on the fraud exception to the policy when a lawyer is alleged to have participated in a fraud

under a state regulatory statute and to an interpretation of the requirements of immediate notice under the policy when a cross-claim is made in the same action by a former client, also a defendant.

### Prior Proceedings

This action was commenced by CIC on June 29, 2000, seeking a declaration that it had no duty to defend and indemnify Borsody as a result of the Allstate Action and that it was entitled to the cost of its defense of the counterclaim asserted by Neuner in that action. On September 11, 2000, Borsody counterclaimed seeking coverage for both the Allstate Action and the Neuner cross-claim.

The instant motions for summary judgment were heard and marked fully submitted on June 13, 2001.

### The Facts

The underlying facts relative to this coverage action are not in dispute, and are set forth in the parties' respective Local Rule 56.1 Statements.

CIC is a corporation organized and existing under the laws of Illinois, with a principal place of business in the State of Illinois, and is authorized to issue insurance policies in the State of New York.

Borsody is an attorney duly licensed to practice law in the State of New York and currently maintains an office for such purpose at 909 Third Avenue, New York, New York. His practice has focused on business and financial issues involving health care law. He has written articles for various publications concerning the legal requirements of the formation of "multidisciplinary" medical practices, and has spoken to health care practitioners and their professional advisors, *i.e.* physicians, chiropractors, physical therapists, attorneys, accountants, businessmen, etc., at numerous seminars.

CIC issued a lawyer's professional liability insurance policy to Borsody, No. LWB–3007967–1, effective for the claims-made period from October 1, 1998 to October 1, 2000 (the "Policy").

In the fall of 1999, CIC proposed revisions of its lawyer's professional liability insurance policy form to the New York State Department of Insurance. Those revisions were approved by the Department of Insurance on February 29, 2000. CIC adopted those revisions effective February 29, 2000.

In December 1999, Borsody was served with a summons and complaint in the Allstate Action. The 64–page complaint ("the Complaint") alleged among other things that Borsody is a New York attorney, and that certain of the defendants, including Borsody, colluded to defraud Allstate, the insurance industry and the ratepayers of New Jersey by creating a sham medical corporation and entering into agreements for the purpose of circumventing New Jersey statutes and the Administrative Code regulating the providing of health care in New Jersey. It alleged that Borsody participated in this conspiracy, by speaking at a seminar and by assisting the defendants.

On December 1, 1999, Borsody sent a copy of the Allstate Action complaint to Bertholon–Rowland, the managing general agent of CIC, with a cover letter requesting that CIC defend the Allstate Action claim, stating therein that while the plaintiff Allstate was not a client of his "the action certainly seems to arise out of my legal practice."

On December 14, 1999, CIC sent a letter to Borsody disclaiming coverage under the Policy on the grounds that the Policy only provides coverage for liability or damages "arising out of any negligent act, error, omission or Personal Injury in the rendering of or failure to render Professional Services" and that the Policy excludes cov-

erage for acts "arising out of any dishonest, fraudulent, criminal or malicious act, omission or deliberate misrepresentation committed by or at the direction of, or with the knowledge of any Insured."

Following receipt of CIC's disclaimer, Borsody retained counsel to represent his interests in the Allstate Action. Borsody's counsel became aware of the possible existence of two criminal investigations of Borsody involving the same or similar issues as alleged in the Allstate complaint.

On or about February 1, 2000, counsel for Borsody filed a motion to dismiss the Allstate action on behalf of Borsody, sought an order dismissing the First, Second and Third Counts due to the misconduct of Allstate's counsel, or in the alternative, an order staying the Allstate Action or compelling discovery into Allstate's role in encouraging a parallel and related criminal investigation or in the alternative severing the First, Second and Third Counts of the complaint.

As a result of a pretrial conference, an agreement was reached with Allstate that the portion of Borsody's motion to stay the proceedings would be withdrawn in exchange for an agreement that discovery would be stayed until such time as Borsody's counsel could consult with the appropriate law enforcement authorities to determine Borsody's status in any pending criminal investigations. It was eventually confirmed that an investigation was being conducted by the Attorney General of the State of New Jersey and that the United States Attorney's Office was not conducting an investigation of matters related to the Allstate Action.

On or about March 8, 2000, counsel to Borsody's office was served with an answer and cross-claim of Neuner in the Allstate Action. Neuner was a former client of Borsody. The cross-claim asserted causes of action against Borsody,

including one denominated "legal malpractice" related to issues in the Allstate Action.

On March 29, 2000, the Honorable Charles E. Villanueva denied Borsody's motion to dismiss and/or stay the Allstate Action in a 12–page opinion (the "Opinion").

Counsel to Borsody sought to determine whether the filing of an answer to either the main Allstate complaint or the Neuner cross-claim would constitute a waiver of Borsody's Fifth Amendment privilege and, in the event that Borsody could not file an answer to the complaint and cross-claim due to Fifth Amendment considerations, whether CIC would deny coverage due to Borsody's failure to cooperate with the carrier.

Upon concluding that answers could be filed without a waiver of privilege, counsel to Borsody forwarded the Neuner cross-claim to CIC on April 17, 2000. The Attorney General's office indicated that Borsody would not be a target of an investigation.

On May 25, 2000, CIC sent a reservation of rights letter to Borsody's counsel reserving its rights to later deny coverage as to the Neuner cross-claim based upon the allegedly late notice provided to CIC.

On or about January 2, 2001, Dahan and Practice Perfect, also defendants in the Allstate Action, filed an amended answer and cross-claim asserting a claim against Borsody for indemnification based upon negligent misrepresentations made by Borsody at their seminars. By letter dated January 18, 2001, CIC agreed to provide a defense for Borsody under the Policy for the Dahan cross-claim, reserving all its rights in that connection.

### Summary Judgment is Appropriate

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for sum-

mary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. In view of the facts presented here and the cross-motions for summary judgment, it is appropriate to determine these issues under Rule 56.

### Coverage Arising Out of the Complaint in the Allstate Action Was Properly Denied

In the "Coverage" section of the Policy it is stated that CIC's defense and indemnity obligations extend to:

Claims ... arising out of any negligent act, error, omission or Personal Injury in the rendering of or failure to render Professional services ...

The indemnity obligation is stated in the first full paragraph of the coverage section, and the defense obligation is set forth in the second full paragraph of that section. The defense obligation is tied to the indemnity obligation by virtue of policy language stating that CIC has a duty to defend any suit against the insured "seeking Damages to which this insurance applies ..."

"Claim" is defined in the "Definitions" section of the policy as follows:

"Claim" means a demand for money or services, or the filing of suit or institution of arbitration proceedings or alter-

native dispute resolution naming an Insured and alleging a negligent act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services ...

The phrase "Personal Injury" is also defined in the policy to refer to certain enumerated torts such as false arrest, wrongful eviction, libel, slander, and copyright and trademark infringement.

■ The complaint in the Allstate Action alleged that Borsody knowingly assisted in a conspiracy to defraud insurance companies by aiding non-physicians in circumventing a New Jersey statute which required a multi-disciplinary health practice to be owned and operated by a plenary licensed physician in accordance with the practice structure provisions of that statute, and required that the services being performed by health care professionals be rendered under the direction of a plenary licensed physician. The complaint alleges that the entire practice structure espoused by Borsody was a sham, knowingly designed to mislead insurers into believing that non-medical services were being rendered by a multi-disciplinary health practice entity which was properly organized, existing, and operated in compliance with New Jersey law, when in fact the entity was not so structured. Borsody is alleged to have knowingly assisted in the conspiracy and to have knowingly benefitted from it. There is no allegation that Borsody was negligent, mistaken or that his alleged misconduct was anything but knowing.

The complaint in the Allstate Action seeks to hold Borsody liable for knowing misconduct—as required by the New Jersey fraud statute which he is alleged to have violated, *see* New Jersey Insurance Fraud Prevention Act, *N.J.S.A.* 17:33A–1 to –30—not for negligence. There is "no reason why the court should ... imagine[ ] what is not in the complaint in order to find liability which was not intended." *Brooklyn Law School v. Aetna Casualty and Sur. Co.,* 849 F.2d 788, 790 (2d Cir. 1988). Under these circumstances, coverage is inapplicable. *See also Morgan Stanley Group, Inc. v. New England Ins. Co.,* 225 F.3d 270, 277–78 (2d Cir.2000); *National Union Fire Ins. Co. v. AARPO, Inc.,* 1999 WL 14010, *3–5, 1999 U.S. Dist. LEXIS 181, *10–*14 (S.D.N.Y.1999); *Green Chimneys School for Little Folk v. National Union Fire Ins. Co.,* 244 A.D.2d 387, 664 N.Y.S.2d 320, 321 (2d Dep't 1997); *Public Service Mut. Ins. Co. v. Camp Raleigh, Inc.,* 233 A.D.2d 273, 650 N.Y.S.2d 136, 137 (1st Dep't 1996); *Board of Educ. of East Syracuse–Minoa Cent. School District v. Continental Ins. Co.,* 198 A.D.2d 816, 604 N.Y.S.2d 399, 400 (4th Dep't 1993).

However, Borsody seeks to emphasize the "arising out of" language as well as the "in the rendering of or failure to render Professional Services by an insured" and to define his action as negligent, an error, omission or personal injury. Professional services in the Policy are defined to include services performed, advice given, and the presentation of papers. It is Borsody's position that the language of Exclusion B in section VII of the Policy excluding "dishonest, fraudulent, criminal or malicious act, omission or deliberate misrepresentation committed by or at the direction of, or with the knowledge of any Insured," is not applicable because the Opinion of Judge Villanueva contained the following language on page 8:

> Borsody's motion to dismiss rests entirely on the following faulty premise that [in] order to maintain a claim that Borsody participated in a scheme to violate practice structure regulations, the plaintiffs must allege that he intentionally and knowingly helped the other defendants create the sham medical corpora-

tion, Northfield. That premise is clearly without merit.

However, in its entirety, the Opinion notes that Borsody is charged in the Allstate Action with violating sections 4(b) and (c) of the Fraud Act which expressly imposes liability upon anyone who "knowingly assists, conspires with, or urges" someone else to violate the Fraud act; and section 4(c) expressly imposes liability upon anyone who, due to the assistance, conspiracy or urging of any person or practitioner, "knowingly benefits ... from the proceeds derived from a violation of this act." Thus, from Allstate's factual allegations, *i.e.,* that Borsody "assisted" in designing the very "system" or "arrangement" that Neuner used to violate the Fraud Act itself, the Opinion concluded that liability is premised upon knowing conduct violative of that Act. Rather than supporting Borsody's contention that exclusion B is inapplicable, Judge Villanueva's decision in the Allstate Action, read in its entirety, actually confirms the fraudulent or dishonest nature of the misconduct charged against Borsody and his alleged liability under the New Jersey Insurance Fraud Prevention Act.

Borsody also relies on *Fitzpatrick v. American Honda Motor Co., Inc.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991), for the proposition that an insurer's defense obligation can be based upon its actual knowledge of facts outside the complaint that potentially bring the claim within the coverage. However, Borsody has not shown that CIC had any actual knowledge of facts showing that Borsody acted negligently.

■ Any conclusory or imagined allegations of negligence against Borsody in the Allstate complaint would not affect the applicability of exclusion B. The fact that Borsody's alleged conduct happened to have occurred in the performance of legal services does not change the overall grava-

men or tenor of the complaint, or otherwise elevate the complaint to a covered dispute. *See Board of Educ. of East Syracuse–Minoa Cent. School Dist. v. Continental Ins. Co., supra,* 604 N.Y.S.2d at 400; *County of Broome v. Aetna Casualty & Surety Co.,* 146 A.D.2d 337, 540 N.Y.S.2d 620, 622 (3d Dep't 1989); *see also Sphere Drake Ins. Co. v. 72 Centre Ave. Corp.,* 238 A.D.2d 574, 657 N.Y.S.2d 65, 66 (2d Dep't 1997). The charges against Borsody in the complaint "aris[e] out of" alleged fraudulent, dishonest or criminal misconduct, and as such are barred from coverage by exclusion B.

### *The Notice of the Cross-claim Was Not Immediate*

■ An insurance carrier's duty to defend is "exceedingly broad," much broader than its corresponding duty to indemnify, *Colon v. Aetna Life & Cas. Ins. Co.,* 66 N.Y.2d 6, 8, 494 N.Y.S.2d 688, 484 N.E.2d 1040 (1985); *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984); *Ruder & Finn v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). Further, the insurer bears the burden of proving that the facts alleged in a covered complaint do not fit within the range of the policy's coverage, *International Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 327, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974); *Prashker v. United States Guar. Co.,* 1 N.Y.2d 584, 592, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956). Still, the language of the Policy must be given meaning.

■ The CIC policy issued to Borsody required that he or his legal representative "immediately" forward to CIC every demand, notice, summons, or other process received.

The New York Court of Appeals has characterized policy provisions mandating immediate notice as setting forth an "iron-

bound requirement," in contrast to policy provisions providing a more "elastic" standard. *See Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 19, 416 N.Y.S.2d 559, 563, 389 N.E.2d 1080 (1979). Borsody relies on *Christiania General Ins. Corp. of New York v. Great American Ins. Co.,* 979 F.2d 268 (2d Cir.1992) for the proposition that Clauses in insurance contracts requiring "prompt notice," notice "as soon as practicable," or "immediate notice" are generally construed to require notice within a reasonable time after the duty to give notice has arisen. *Id.* at 275. Aside from being *obiter dicta,* the New York case cited in support of that proposition, *Security Mutual Ins. Co. v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972), does not address the issue—it turns on a contract clause which provides for notice "as soon as practicable." *Id.* at 441, 340 N.Y.S.2d 902, 293 N.E.2d 76. In any event, whether analyzed under a requirement of "immediate" notice or notice "as soon as practicable," the 40-day delay here cannot be justified under all the circumstances.

State and federal courts have held relatively short delays in providing notice of an actual or potential claim to violate such a notice requirement. *See, e.g., M.Z. Discount Clothing Corp. v. Meyninger,* 23 F.Supp.2d 270, 272 (E.D.N.Y.1998) (more than 10-day delay is not immediate); *Rushing v. Commercial Casualty Ins. Co.,* 251 N.Y. 302, 304, 167 N.E. 450 (1929) (22-day delay); *Goodwin Bowler Assocs., Ltd. v. Eastern Mutual Ins. Co.,* 259 A.D.2d 381, 687 N.Y.S.2d 126, 127 (1st Dep't 1999) (2 months). *See generally American Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 440 (2d Cir.1995) ("Under New York law, delays for one or two months are routinely held 'unreasonable'"); *American Home Assur. Co. v. Republic Ins. Co.,* 984 F.2d 76, 78 (2d Cir.), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993)

(same); *Martinson v. Massachusetts Bay Ins. Co. .,* 947 F.Supp. 124, 131 (S.D.N.Y. 1996) (same); *Chicago Ins. Co. v. Halcond,* 49 F.Supp.2d 312, 320 (S.D.N.Y.1999) (38-day delay does not satisfy requirement to notify "as soon as practicable").

Here, Borsody failed to notify CIC of the Neuner cross-claim until 40 days after that pleading had been served upon them.

Borsody seeks to conflate this delay with his counsel's effort to research the effect of the exercise of a Fifth Amendment privilege on filing an answer and an insured's duty to assist in his defense. However those issues might be resolved, they do not justify sending the required notice which in no way would implicate the Fifth Amendment.

Borsody has sought refuge in an amendatory endorsement in the CIC policy to try to overcome these well-established principles. However, the Endorsement does not change the Policy notice conditions themselves, and does not state that any excuse, or even reasonable excuses, can be offered to avoid late notice of a claim or suit. Rather, it simply supplements the notice conditions by specifying that untimely notice will not invalidate coverage only "if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

■ Here, it was indeed "reasonably possible" for Borsody to provide immediate notice to CIC of the Neuner cross-claim. Borsody is presumed to have read his policy and to know its terms and conditions. *See Wausau Underwriters Ins. Co. v. St. Barnabas Hosp.,* 145 A.D.2d 314, 534 N.Y.S.2d 982 (1st Dep't 1988); *L.C.E.L. Collectibles, Inc. v. American Ins. Co.,* 228 A.D.2d 196, 643 N.Y.S.2d 102 (1st Dep't 1996).

The consideration of certain issues relating to a possible criminal investigation do

not establish that it was "not reasonably possible" to give immediate notice nor that the notice was given "as soon as reasonably possible."

Borsody also relies upon two cases, *Wojna v. Merchants Ins. Group*, 119 Misc.2d 734, 735, 464 N.Y.S.2d 664 (Sup.Ct. Erie Co.1983), and *2423 Mermaid Realty Corp. v. New York Property Ins. Underwriting Assn.*, 142 A.D.2d 124, 129, 534 N.Y.S.2d 999 (2d Dep't 1988), for the proposition that an insured's breach of a policy cooperation clause, by failing to comply with the carrier's request for a statement concerning an incident, can be excused where criminal charges were pending against the insured with respect to that incident. However, here CIC did not ask for a statement from Borsody. Further, the propriety of the disclaimers in those cases, and the validity of the insureds' excuses for failing to provide information to their carriers, were judged according to the strict standards applicable to disputes concerning policy cooperation clauses. *See Thrasher v. U.S. Liab. Ins. Co.*, 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967). Those standards have no bearing in the late notice context.

■ It is even questionable whether the cooperation cases cited by Borsody are in accord with more recent decisions indicating that an insured cannot use the Fifth Amendment to avoid his policy cooperation obligations. *See Zehava Harary v. Allstate Ins. Co.*, 988 F.Supp. 93, 102–03 (E.D.N.Y.1997); *Allstate Ins. Co. v. Longwell*, 735 F.Supp. 1187 (S.D.N.Y.1990). In any event, there is no reason to allow Borsody to use the Fifth Amendment to excuse his failure to provide immediate notice of civil claims to the carriers.

■ Borsody further contends that CIC received notice of a potential claim by Neuner at the time it was provided with the original Allstate complaint in Decem-

ber 1999. However, as the discussion thus far has established, the nature of the complaint and the cross-claim are very different, turning on the issue of intent.

Even if CIC had received notice of a potential claim by Neuner in December 1999, Borsody still was obligated by the Policy, and by applicable case law, to provide immediate notice of the actual cross-claim. *See also Axa Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc.*, 891 F.Supp. 978, 983 (S.D.N.Y.1995), *aff'd*, 84 F.3d 622 (2d Cir.1996).

Borsody also cites *Brooklyn Union Gas Co. v. North River Ins. Co.*, 124 A.D.2d 621, 508 N.Y.S.2d 26 (2d Dep't 1986), for the proposition that when an insurer receives timely notice of the main action, it cannot disclaim coverage of a third-party action later filed against its insured. *Brooklyn Union*, a one-paragraph memorandum decision, in which the policy conditions were not described, does not control the CIC Policy which specifically requires immediate notice of "every" demand, notice or process received by the insured.

In addition, *Brooklyn Union* appears to conflict with several federal and state court decisions in which insureds' timely notices of initial incidents, or of prior related actions, did not excuse their failure timely to notify their carriers of a subsequent "related" claim or suit. *See Axa Marine & Aviation Ins. (UK) Ltd. v. Seajet Industries, Inc., supra; Brooklyn Law School v. Aetna Cas. & Sur. Co.*, 661 F.Supp. 445, 448, 451–52 (E.D.N.Y.1987), *aff'd*, 849 F.2d 788 (2d Cir.1988); *57th Street Management Corp. v. Zurich Ins. Co.*, 208 A.D.2d 801, 617 N.Y.S.2d 852 (2d Dep't 1994). Indeed, in *57th Street Management*, the Second Department found that an insured's timely notice to its carrier of a workers' compensation claim—a claim which the carrier contested—did not suffice as notice to that carrier of a later third-party action against the insured aris-

ing out of the same incident. 617 N.Y.S.2d at 853. In view of that 1994 decision, it is questionable whether *Brooklyn Union* has any continued significance.

For these reasons, CIC is not obligated to defend or indemnify Borsody against the Neuner cross-claim and is entitled to reimbursement of defense costs incurred by it with respect thereto.

### Conclusion

Because of the fraud exclusion in the Policy and the notice of claim requirement, CIC's motion for summary judgment is granted.[1]

Settle judgment on notice.

It is so ordered.

---

1. The implications of effect of the cross-claim by Daniel Dahan and Practice Perfect against Borsody in the Allstate Action which CIC has undertaken to defend with a reservation of rights and any consequent requirement to defend any related claims has not been briefed by the parties or, obviously, considered by the Court.