**Paul K. ROONEY, P.C.,**
**Plaintiff–Appellant,**

v.

**CHICAGO INSURANCE COMPANY,**
**Defendant–Appellee.**

**No. 01–7396.**

United States Court of Appeals,
Second Circuit.

Nov. 14, 2001.

**54**

Paul K. Rooney, Law Offices of Paul K. Rooney, New York, NY, for appellant.

Steven F. Coploff, Steinberg & Cavaliere, LLP, White Plains, NY, for appellee.

Present POOLER, KATZMANN, Circuit Judges, and HURD, District Judge.*

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

Plaintiff Paul K. Rooney, P.C. ("Rooney"), a professional legal corporation, appeals from the district court's grant of summary judgment dismissing its complaint in which the firm alleged that defendant Chicago Insurance Company ("CIC") breached a contract for malpractice insurance (the "policy") that he purchased. The district court found that Rooney's claim for counsel fees and expenses he incurred in obtaining reversal of a district court award of sanctions was outside the scope of the policy's coverage and that, in any case, Rooney did not give timely notice of any claim against it. *Rooney v. Chicago Ins. Co.,* 2001 WL 262703 (S.D.N.Y. Mar.16, 2001).

In Section I, denominated "COVERAGE," the policy provides that "[t]he Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES for CLAIMS ... arising out of any negligent act, error, omission or PERSONAL INJURY in the rendering or failure to render PROFESSIONAL SERVICES by an INSURED covered under this policy." The definitions section of the policy defines "damages" as "compensatory judgments, settlements or awards but ... not ... punitive or exemplary damages, fines or penalties assessed directly against any INSURED." Section VII of the policy, denominated "EXCLUSIONS" provides that the policy did not apply to claims "[a]rising out of any dishonest, fraudulent, criminal or malicious act, omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any INSURED; however, the INSURED shall be reimbursed for all CLAIM EXPENSES which would have been collectible under this policy if it is determined by judgment that the Insured did not commit a fraudulent or dishonest act or omission." Policy § VII(B).

The policy also included notice of occurrence and notice of claim requirements.

Rooney and others represented Schlaifer, Nance, & Company ("SNC") against the estate of Andy Warhol in the litigation that underlies this lawsuit. In 1997, we affirmed the district court's determination granting the estate's motion to set aside a verdict in favor of SNC. *Schlaifer, Nance*

---

* The Honorable David N. Hurd, United States District Court Judge for the Northern District of New York, sitting by designation.

*& Co. v. Estate of Warhol,* 119 F.3d 91 (2d Cir.1997). Following this decision, on October 31, 1997, the estate requested permission from the district court to move for sanctions against SNC and its attorneys including Rooney. After receiving the court's permission, the estate duly filed a sanctions motion. In an opinion issued June 3, 1998, the district court awarded sanctions against several parties, again including Rooney. *Schlaifer, Nance & Co. v. Warhol,* 7 F.Supp.2d 364, 380 (S.D.N.Y. 1998). Upon receipt of the district court's decision, Rooney provided its first notice of claim to CIC. CIC declined coverage by letter dated June 29, 1998, because SNC's motion for sanctions did not charge Rooney "with a negligent act, error or omission or Personal Injury" and the sanctions award did not constitute "damages" within the meaning of the policy. Alternatively, CIC stated that it would decline coverage due to Rooney's untimely notice of claim. Rooney later obtained a reversal of the district court's sanctions award, *see Schlaifer, Nance & Co. v. Warhol, Inc.,* 194 F.3d 323 (2d Cir.1999), and promptly requested coverage again. After receiving CIC's renewed disclaimer, Rooney filed this lawsuit.

On appeal, Rooney does not argue that Section I, the coverage section of the policy, provided him with coverage. Instead, he argues that the exception to the exclusion in Section VII(B) is an affirmative grant of coverage. This argument lacks a logical underpinning. Section I of the policy defines its scope of coverage, Section VII(B) states that claims that arise out of "any dishonest, fraudulent, criminal or malicious act, omission or deliberate misrepresentation," are excluded from coverage but provides an exception to that exclusion in the words, "however, the INSURED shall be reimbursed for all CLAIM EXPENSES which would have been collectible under this policy if it is determined by judgment that the INSURED did not commit a fraudulent or dishonest act or omission." Both the exception's placement in the policy as an exception to an exclusion from the coverage set out in Section 1 and the exception's indication that it is limited to claims that "would have been collectible under the policy" indicate that the exception merely provides coverage for those claims that would have been covered under Section I if it were not for the Section VII(B) exclusion, provided that the insured first obtains a judgment establishing that it did not commit a fraudulent or dishonest act or omission.

Because Rooney did not have coverage from CIC for expenses related to the sanctions motion or the appeal, it is not necessary to address the district court's alternative basis for dismissing Rooney's complaint—its failure to provide timely notice.