Michael F. SIRIGNANO, Plaintiff,

v.

CHICAGO INSURANCE COMPANY, Defendant.

No. 01 Civ. 7010(CM).

United States District Court, S.D. New York.

March 26, 2002.

Anthony J. Caputo, White Plains, NY, for Plaintiff.

Kevin F. Cavaliere, Steinberg & Cavaliere, L.L.P., White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

In this insurance coverage action, plaintiff, an attorney confronted with the spectre of malpractice liability, seeks a declaration that Defendant, Chicago Insurance Company (CIC), is obligated to defend and indemnify him under the terms of his malpractice policy. He moves for summary judgment. CIC opposes that motion and cross-moves for summary judgment on the ground that plaintiff failed to provide CIC with timely notice of a potential claim as required by the terms of the lawyer's professional liability insurance policy at issue.

Plaintiff's motion is denied and Defendant's cross motion is granted.

The undisputed facts show that plaintiff learned of circumstances which reasonably could be expected to be the basis of a claim against him early in 1999, but did not report the potential claim to CIC until October 31, 2000, a year and a half later. Such a delay is unreasonable as a matter of law. Moreover, plaintiff has set forth no legally cognizable excuse for his inordinate delay. Moreover, contrary to plaintiff's assertions, CIC's disclaimer was not untimely. Accordingly, plaintiff is not entitled to coverage from CIC for Miller's claim.

### *Statement of Facts*

The undisputed facts are as follows:

Michael Sirignano is an attorney admitted to practice in the State of New York. He was engaged to represent Raymond Miller in a medical malpractice action against Dr. Jack Fein. The action was commenced in the Supreme Court, Dutchess County, in 1990. Note of Issue and the Certificate of Readiness were filed in August 1995. The matter was scheduled for trial on September 15, 1997. On that date, both parties appeared with counsel and answered Ready at the call of the calendar. However, the presiding judge marked the case off calendar because of plaintiff's failure to provide his opponent with expert reports prior to trial (the judge was asked to preclude experts from testifying on behalf of plaintiff's client; in the circumstances, the court cut Sirignano a break). Nothing happened, and fifteen months later, Dr. Fein's counsel moved for an order pursuant to CPLR 3404 dismissing the case as abandoned. On January 14, 1999, without further action by the court, the Clerk of the Court entered judgment dismissing the complaint.

Sirignano then moved to vacate the judgment, but Justice Pagones denied relief on April 29, 1999. He took an appeal on behalf of his client, but the Appellate Division, Second Department affirmed the dismissal of the malpractice action on January 3, 2000. In the autumn of 2000, a motion for leave to appeal to the New York Court of Appeals was denied by that Court.

Shortly thereafter, on October 31, 2000, Sirignano notified CIC, his malpractice carrier, that there was a chance that Mr. Miller may assert a claim against him although he has not given me any such indication. (Cavaliere Aff. Ex. B) The insurer requested the file on the underlying action by letter dated February 9, 2001. Six days later, on February 15, 2001, attorneys representing Miller contacted Sirignano concerning his legal malpractice claim. Plaintiff forwarded the file in *Miller v. Fein* to CIC on February 23, 2001. By letter dated March 30, 2001, CIC denied coverage, attributing its denial to Sirignano's failure to give the insurer timely notice of the potential claim.

Sirignano commenced an action for declaratory judgment of coverage in Supreme Court, Westchester County, on June 25, 2001. The action was timely removed to this Court.

### Conclusions of Law

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. See *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'n'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Here, summary judgment in CIC's favor is warranted, as the undisputed facts demonstrate it has no duty to indemnify or defend on the facts presented.

### Plaintiff Failed to Comply with the Policy Condition Requiring Timely Notice of a Potential Claim

In section IX of the policy at issue, entitled "Conditions," it is stated in relevant part as follows:

"**B. Assistance and Cooperation of Insured in the Event of Claim or Suit:** Upon the **Insured** becoming aware of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which could reasonably be expected to be the basis of a **Claim** covered hereby, written notice shall be given by the **Insured,** or its representative to the Company together with the fullest information obtainable as soon as practicable. If **Claim** is made or suit is brought against the **Insured,** the **Insured** or its representative shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative."

By that language, the policy imposes two separate notice conditions. The first sentence comprises the condition requiring timely notice of a potential claim, while the second sentence refers to notice of an actual claim or suit. *See Bellefonte Ins. Co. v. Albert, P.C.*, 99 A.D.2d 947, 472 N.Y.S.2d 635, 636 (1st Dept.1984) (*"Bellefonte"*) As the Appellate Division recognized in *Bellefonte*, such policy conditions are unambiguous and comport with most attorney's professional liability policies. 472 N.Y.S.2d at 636.

There is no dispute in this case concerning the notice-of-claim or suit condition, since plaintiff gave CIC notice of Miller's February 15, 2001 claim letter shortly after he received it. However, plaintiff did not give CIC notice of a potential claim

until October 31, 2000, approximately 18–22 months after he learned of it. This violated the terms of the policy.

In dealing with the policy condition at issue here, my colleague Judge Koeltl aptly characterized it is a "notice of occurrence" provision. *Rooney v. Chicago Insurance Co.*, 2001 WL 262703 at *8–*9, 2001 U.S. Dist. LEXIS 2796 at *26–*27 (S.D.N.Y.2001), *aff'd*, 26 Fed.Appx. 53 (2d Cir.2001). The Second Circuit has recognized that such provisions have "several purposes":

> "They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves."

*Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987). Notice of occurrence provisions particularly in a legal malpractice insurance context allow carriers to become involved in determining, and possibly assisting in, any appropriate efforts to mitigate or remediate the errors of their insureds.

■ Thus, under New York law, where an insurance policy requires notice of a potential claim, the insured must promptly notify the insurer when the insured reasonably might expect to be the subject of a malpractice claim. *See Bellefonte, supra.* The requirement that an insured notify its liability carrier of a potential claim operates as a condition precedent to the insurer's defense and indemnity obligations. *See White v. City of New York*, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 760, 615 N.E.2d 216 (1993). For example, in *Ingalsbe v. Chicago Ins. Co.*, 270 A.D.2d 684, 704 N.Y.S.2d 697, 698 (3d Dept.2000), in connection with the question whether the insured should have reported a potential claim to the first of two back-to-back insurers, the Court held that the insured "had a reasonable basis upon which to report a potential claim to his malpractice carrier when he knew that he had missed the statute of limitation on his client's claim." *See also Bellefonte, supra.* His failure to do so resulted in no coverage.

■ Additionally, as the New York Court of Appeals stated in *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76 (1972),

> "Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy ... and the insurer need not show prejudice before it can assert the defense of noncompliance ...."

That statement of the law remains applicable today. *See, e.g., State of New York v. Blank*, 27 F.3d 783, 797 (2d Cir.1994); *Roche v. G.E. Capital Life Assur. Co.*, 281 A.D.2d 932, 722 N.Y.S.2d 456 (4th Dept. 2001).

■ If the policy is silent as to when notice must be given, "the law implies a duty to give timely notice within a reasonable time," and it is the insured's burden to demonstrate satisfaction of all conditions precedent, including timely notice. *Thomson v. Power Auth. of State of N.Y.*, 217 A.D.2d 495, 629 N.Y.S.2d 760, 761 (1st Dept.1995).[1]

---

1. Since the timeliness of plaintiff's notice to CIC is judged by a reasonableness standard whether or not the "as soon as practicable" language of the amended policy form is considered, *see Jenkins v. Burgos*, 99 A.D.2d 217, 472 N.Y.S.2d 373, 375 (1st Dept.1984), the addition of that language to the CIC policy

As another of my colleagues, Judge Sweet, recently found,

"State and federal courts have held relatively short delays in providing notice of an actual or potential claim to violate such a notice requirement."

*Chicago Ins. Co. v. Borsody,* 165 F.Supp.2d 592, 599 (S.D.N.Y.2001). *See generally American Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 440 (2d Cir.1995) ("Under New York law, delays for one or two months are routinely held 'unreasonable' "); *Martinson v. Massachusetts Bay Ins. Co.,* 947 F.Supp. 124, 131 (S.D.N.Y. 1996) (same).

■ Here, it could not be any clearer that plaintiff failed timely to advise CIC of a potential claim. The case plaintiff was handling for Mr. Miller, which plaintiff believed to have merit, was dismissed as abandoned in January 1999 because plaintiff had done nothing to restore the case to the calendar within the 1–year period allowed by CPLR 3404. Plaintiff's knowledge of that dismissal was alone sufficient to create the reasonable expectation of a malpractice claim. *See Ingalsbe v. Chicago Ins. Co., supra; Bellefonte, supra.*

Even if there were any question as to whether the clerk's CPLR 3404 dismissal was sufficient to give rise to the reasonable expectation of a claim, the Court then considered and denied plaintiff's motion to vacate the dismissal in April 1999, and in so doing, plainly rejected the explanation which plaintiff offered to excuse his prior default. Notably, the Court, in directing plaintiff personally to pay the costs of the medical malpractice to defendants' counsel, stated in its April 29, 1999 Order that plaintiff's vacatur motion was itself procedurally defective because plaintiff failed to submit a sworn statement from an expert as to the merits of the case and a sworn

statement from Mr. Miller that he never intended to abandon the action.

Thus, regardless of plaintiff's subjective and conclusory claim in this Court that he was unaware of any conduct on his part which reasonably could give rise to a claim, the events which occurred in the medical malpractice action between January and April 1999 are such that any reasonable attorney-insured could reasonably have expected a claim. *See Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d Cir.1995) ("The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim"); *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp., supra,* 31 N.Y.2d at 442, 340 N.Y.S.2d at 907, 293 N.E.2d at 79.

While the clerk's dismissal in January 1999 and the Court's denial of the vacatur motion in April 1999—separately or together—were sufficient to put plaintiff on notice of a potential claim, it is notable that plaintiff's renewal motion was denied, also on procedural grounds, in July 1999, because the facts set forth therein were available to plaintiff at the time of the initial vacatur motion.

■ In short, under any objective view of the facts, there were a series of errors by plaintiff, each of which was clearly brought to his attention from the beginning to the middle of 1999, and all of which compromised his client's right to recover. It is hard to imagine what more, short of the filing of a complaint by the client, would be necessary to trigger the policy's notice of occurrence requirement. Indeed, to hold the foregoing facts insufficient would render the notice clause meaningless; and it is hornbook law that an insur-

form effective February 29, 2000 has no prac-

tical effect on the outcome of this dispute.

ance policy cannot be construed so as to render its terms meaningless or of no effect. *See Bretton v. Mutual of Omaha Ins. Co.*, 110 A.D.2d 46, 492 N.Y.S.2d 760, 763 (1st Dept.), *aff'd*, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 (1985); *see also Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 521, 465 N.E.2d 26 (1984); *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978).

### Plaintiff Has No Legally Cognizable Excuse for His Failure to Provide Timely Notice

 While the law recognizes some excuses for an insured's failure to give an insurer timely notice of a potential claim, "the insured has the burden of showing the reasonableness of such excuse [citation omitted]." *White v. City of New York, supra*, 81 N.Y.2d at 957, 598 N.Y.S.2d at 760, 615 N.E.2d at 216; *see also Duffin v. Colonial Indem. Ins. Co.*, 270 A.D.2d 942, 706 N.Y.S.2d 559, 560 (4th Dept.2000); *Can–Am Roofing, Inc. v. American States Ins. Co.*, 229 A.D.2d 973, 645 N.Y.S.2d 253, 255 (4th Dept.1996). "[W]here the insured offers no excuse or an excuse unsupported by credible facts, the issue of reasonableness may be determined by the court as a matter of law . . . ." *Id.*

In plaintiff's moving papers, he offers no "excuse" for failing to provide timely notice, but rather takes the position that the notice condition never was triggered because he subjectively believed that he had not breached a professional duty.[2] Then, somewhat inconsistently, he seems to claim

as an "excuse" that he should have been allowed to withhold notice from CIC until the remediation process had run its course in October 2000 (when the New York Court of Appeals denied his motion for leave to appeal). However, not only does that "excuse" defeat some or all of the purposes of the notice of potential claim condition, it has been flatly rejected in New York, *see Bellefonte, supra*. In *Bellefonte*, the Appellate Division held that an insured lawyer is not permitted to await the outcome of an appeal he was prosecuting on behalf of the client before giving notice to his carrier, when he became aware of a potential malpractice claim some 17 months earlier. *Id.*

 Thus, *Bellefonte* makes clear that the fact that an insured lawyer continues to represent the client in a pending matter, and that the courts have not finally spoken on the case, does not eliminate his notice responsibility to his carrier. *See also Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073, 1080 (W.D.Pa.1997), *aff'd w/o opin.*, 149 F.3d 1165 (3d Cir.1998).

 Along the same lines, plaintiff seems to suggest that Mr. Miller's failure to notify Sirignano that he intended to assert a malpractice claim until February 15, 2001 excuses his own failure to notify CIC. However, under New York law, the fact that an injured party does not tell the insured that a claim will be made is an insufficient excuse for failing to give timely notice. Indeed, even if the injured party tells the insured that no claim will be made, that does not excuse a notice delay.[3]

---

2. The immediately preceding discussion demonstrates that plaintiff's position in that regard is meritless, and that his stated subjective belief, even if deemed credible, was more in the nature of wishful thinking.

3. An apparent exception to that rule is in the situation—unlike here—where there is a

"close *familial* relationship" between the insured and the injured party. *Argentina v. Otsego Mut. Fire Ins. Co.*, 86 N.Y.2d 748, 751, 631 N.Y.S.2d 125, 126, 655 N.E.2d 166 (1995) (emphasis added) (describing the case as having "peculiar circumstances"). Clearly, in an attorney-client context, the parties' relationship is irrelevant in determining the

*See E.B. Gen. Contracting v. Nationwide Ins. Co.*, 189 A.D.2d 796, 592 N.Y.S.2d 455, 456 (2d Dept.1993) (claimant told insured that he did not intend to sue anyone—late notice disclaimer upheld); *Platsky v. Government Employees Ins. Co.*, 181 A.D.2d 764, 581 N.Y.S.2d 235 (2d Dept.1992) (same); *see also Vradenburg v. Prudential Property & Casualty Ins. Co.*, 212 A.D.2d 913, 622 N.Y.S.2d 623, 624 (3d Dept.1995).

Further, the fact is that plaintiff finally notified CIC of a potential claim before Mr. Miller asserted that a claim would be made. Thus, plaintiff clearly understood the obligation to provide notice of a potential claim where no claim overtures had been made.

Because plaintiff has not asserted any cognizable excuse for his notice delay, his motion must be denied and CIC's cross-motion is granted.

### CIC's Disclaimer Cannot Be Deemed Untimely

Plaintiff's final contention is that CIC's disclaimer was untimely and should therefore be barred. That contention is factually and legally flawed.

 CIC's coverage denial was not untimely. The defense and indemnity obligations are not governed by the notice of occurrence rules. Rather, they are triggered only by the bringing of a claim or suit against the insured. (See Cavaliere Aff. Ex. A, at page 1 of 9 of policy jacket). Until there is an actual claim or suit, there is no defense or indemnity obligation to disclaim. And while there is no impediment to holding an insured to the notice of occurrence provisions in his contract, there is equally nothing wrong with permitting a liability insurer to postpone denial of coverage until a claim is actually filed. Early denial may prevent it from ever having the opportunity to be notified of any actual claim or suit against its insured and to reassess the coverage therefor. Premature denial may also engender needless conflict between the insured and its carrier, as well as litigation over something that never may come to pass. *Cf. Combustion Engineering, Inc. v. Travelers Indem. Co.*, 53 N.Y.2d 875, 877, 440 N.Y.S.2d 617, 617, 423 N.E.2d 40 (1981) (court has no jurisdiction to render a declaratory judgment where any actual controversy between the parties "depend[s] upon a future event beyond the control of the parties which may never occur ....").

Before plaintiff's receipt of the February 15, 2001 letter from claimant's counsel, there was no claim or suit to be covered or disclaimed. After providing a copy of that claim letter to CIC on February 20, 2001, plaintiff forwarded to CIC the documents from the underlying medical malpractice action in late February 2001. CIC then reviewed same and, after referring the matter to and consulting with its coverage counsel (which CIC had every right to do), it denied coverage by letter dated March 30, 2001, just a month and a few days after having been provided with the documents. Plaintiff has cited no cases barring an insurer from denying coverage in circumstances even remotely resembling the case at bar.

The cases that plaintiff does cite are inapposite, since they all involve bodily injury or death claims as to which, under New York Insurance Law § 3420(d) and decisions construing that statute, an insurer is obligated to disclaim coverage within a specified period or else be barred from doing so. By its terms, Section 3420(d)

---

viability of an excuse for late notice. *Bellefonte, supra; Mt. Airy Ins. Co. v. Thomas,* *supra,* 954 F.Supp. at 1080.

does not apply to claims for legal malpractice. *See Vecchiarelli v. Continental Ins. Co.*, 277 A.D.2d 992, 716 N.Y.S.2d 524 (4th Dept.2000); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612 N.Y.S.2d 441, 443 (2d Dept.1994). Further, in each of plaintiff's cited cases, the insurer was barred by section 3420(d) where it delayed unreasonably in issuing a disclaimer with respect to an asserted claim or suit. Here, no claim was tendered to CIC for defense before February 20, 2001, and coverage was denied a mere 38 days later. That does not qualify as undue delay.

■ There is also no basis upon which to find that CIC waived its right to deny coverage, as plaintiff suggests. Under the common law, "waiver ... is a voluntary and intentional relinquishment of a known right ...." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84 (1980), and cannot be found unless there was "full knowledge of the facts upon which the existence of the right depends ...." *Amrep Corp. v. American Home Assur. Co.*, 81 A.D.2d 325, 440 N.Y.S.2d 244, 247 (1st Dept.1981). Waiver cannot be lightly inferred and cannot be found unless the carrier made a conscious choice to waive its rights. *See Mooney v. City of New York*, 219 F.3d 123, 131 (2d Cir.2000), *cert. den.*, 531 U.S. 1145, 121 S.Ct. 1083, 148 L.Ed.2d 958 (2001). "Negligence or oversight is not enough to establish waiver," *Metropolitan Life Ins. Co. v. Blum*, 7 A.D.2d 488, 184 N.Y.S.2d 455, 457–58 (1st Dept.1959), *aff'd*, 9 N.Y.2d 954, 217 N.Y.S.2d 225, 176 N.E.2d 202 (1961), and, even after it undertakes an insured's de-

fense, an insurance company is entitled to a reasonable time to investigate issues such as whether the insured timely complied with policy notice requirements, *see Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc., supra,* 822 F.2d at 271. It serves no one's interests to force insurers to make rash coverage decisions before they have all the information relevant to those decisions for fear of otherwise waiving their rights. *Id.*

■ Here, of course, CIC did not knowingly and voluntarily waive any rights. Even if CIC had all the information concerning the potential claim against plaintiff when Sirignano first reported the possibility that a claim might be asserted on October 31, 2000 (which it did not), no waiver could have resulted from a failure to disclaim coverage at that time, because no claim or suit was pending against plaintiff at that time. When CIC was presented with the relevant documents from the medical malpractice action in late February 2001,[4] it acted promptly to review that information, assign coverage counsel, and issue the denial letter. Clearly, under those circumstances, there was no intentional and voluntary relinquishment by CIC of a known right sufficient to give rise to a waiver. Plaintiff cites no cases to support a waiver finding in this context.

■ Finally, plaintiff makes reference to certain insurance regulations to support his waiver claim. However, the regulations cited by plaintiff, 11 N.Y.C.R.R. §§ 216.5(a), 216.6, do not create any private rights. *See Aetna Casualty & Sur. Co. v. ITT Hartford Ins. Co.*, 249 A.D.2d

---

**4.** Notwithstanding the fact that it was plaintiff's express obligation under the notice of potential claim condition to provide CIC "with the fullest information obtainable" concerning the matter being reported, additional information and documents from the medical malpractice action were not provided to CIC until after it requested same in a letter to plaintiff dated February 8, 2001.

241, 672 N.Y.S.2d 310 (1st Dept.1998).[5]

### Conclusion

For all of the foregoing reasons, CIC's motion is granted and plaintiff's motion is denied. The complaint is dismissed, and a judgment declaring that CIC is not liable under the malpractice policy shall be submitted for signature within ten days.

This constitutes the decision and order of the Court.

---

**5.** One of the statutory authorizations for those regulations is New York Insurance Law § 2601, the Unfair Claims Settlement Practices Act. State and federal courts have made clear that that statute does not create any private rights of action. *See Harris v. Allstate Ins. Co.,* 83 F.Supp.2d 423 (S.D.N.Y.2000); *Gucciardo v. Reliance Ins. Co.,* 84 F.Supp.2d 399 (E.D.N.Y.2000); *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).