OPINION OF THE COURT
Patrick H. NeMoyer, J.
The Underlying Malpractice Action
Plaintiffs Amy and Thomas McCabe were the owners of a residence that was totally destroyed by fire on December 30, 2003. Plaintiffs retained attorney David E. Fretz to handle their fire loss claim under their homeowner’s policy. During the course of that representation, Fretz began to suffer from severe depression and thus became unable to handle his own, let alone plaintiffs’, business and legal affairs. As a consequence of Fretz’ neglect of their insurance claim, plaintiffs lost their ability to recover on that claim. Eventually, in late March 2007, plaintiffs *728 commenced an action against Fretz for malpractice. Although Fretz had malpractice insurance coverage under a $1 million claims-made-and-reported policy issued by defendant St. Paul Fire and Marine Insurance Company,[1] 2Fretz failed to notify St. Paul of plaintiffs’ malpractice claim against him in time for St. Paul to submit an answer on Fretz’ behalf in the action, in which Fretz eventually was determined to be in default. In December 2007, following an inquest on damages, this court awarded plaintiffs compensatory damages of $226,000, and those damages were ordered trebled pursuant to Judiciary Law § 487. Thus, by judgment entered January 2, 2008, Fretz was directed to pay plaintiffs just over $700,000, inclusive of costs, disbursements, and interest to the date of entry of the judgment.
The Instant Declaratory Judgment Action By their June 2008 complaint against Fretz and St. Paul, plaintiffs seek a judgment invalidating St. Paul’s July 17, 2007 disclaimer of coverage of Fretz under the policy in question, and thus declaring that St. Paul is required to indemnify Fretz for the judgment in the malpractice action and concomitantly required to pay plaintiffs the amount of that judgment, plus postjudgment interest. By its answer to that complaint, St. Paul denies liability to plaintiffs and counterclaims for a judgment declaring that St. Paul has no obligation to indemnify Fretz and/or pay plaintiffs in connection with the judgment entered in the underlying malpractice action. This decision and order is occasioned by plaintiffs’ motion and St. Paul’s cross motion for summary judgment, with each movant seeking the declaration sought in their respective pleadings.
The Legal Framework
According to the policy in question, which was in effect from January 14, 2006 through January 14, 2007, St. Paul’s obligation to indemnify Fretz for claims against him is defined and conditioned as follows:
“1. INSURING AGREEMENTS
“We will pay on behalf of an insured ‘damages’1[2]1
and ‘claims expenses’ for which ‘claim’ is first made
*729 against an insured and reported to us within the ‘policy period’, [during] any subsequent [period of] renewal of the policy by us[,] or [during the] applicable Extended Reporting Period. Such ‘damages’ must arise out of error, omission, negligent act or ‘personal injury’, in the rendering of or failure to render ‘legal services’ for others by you or on your behalf. The error, omission, negligent act or ‘personal injury’ must occur on or after the retroactive date stated in the Declarations, if any.”
The policy specifically excludes coverage for “claims” “[a]rising out of ‘bodily injury’ or ‘property damage’,” which phrases have conventional definitions under the policy. The term “claim” is defined in the policy as “a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render ‘professional legal services’ for others by you or on your behalf.” According to the policy, the “applicable Extended Reporting Period” was 60 days following the policy expiration date, meaning that the “Extended Reporting Period” extended to March 15, 2007 in this case. Thus, in order for Fretz to be entitled to defense and indemnification under the policy, the claim must have been one both made against Fretz between January 14, 2006 and January 14, 2007 and (if reported by Fretz) reported to St. Paul between January 14, 2006 and March 15, 2007. On the other hand, to the extent that the reporting of the claim to St. Paul was carried out by plaintiffs as the injured parties as opposed to Fretz as the insured (and assuming the applicability of Insurance Law § 3420 [a]), the claim must have been one made against Fretz between January 14, 2006 and January 14, 2007 and reported to St. Paul by March 15, 2007 or within any subsequent reasonable period of time bestowed upon plaintiffs by Insurance Law § 3420 (a) (3) and (4). Thus, in legal terms, the motion and cross motion focus on both the policy provisions requiring and defining the timely making and reporting of a claim and the applicability and scope of Insurance Law § 3420 (a).
The Relevant Facts Concerning Notice and Disclaimer Factually speaking, the focus of the motion and cross motion is on the repeated efforts by plaintiffs to communicate with Fretz, the eventual communications by both Fretz and plaintiffs with St. Paul, and St. Paul’s responses to those communica *730 tions. Apparently, plaintiffs’ first attempt to communicate with Fretz following his catastrophic neglect of their insurance claim came in late September 2006, after plaintiffs had consulted with attorney John J. Fromen for the purpose of engaging in such communication. Plaintiffs apparently do not contend that Fromen’s September 22, 2006 letter to Fretz constituted the making of a claim against Fretz, so this court will not summarize that letter. It is enough to note that Fretz did not respond to Fromen’s entreaties to contact Fromen with regard to plaintiffs’ matter.
On January 2, 2007, plaintiffs themselves wrote Fretz as follows:
“We [have] attempted to contact you for over six months, we also had another attorney attempt to contact you. We don’t understand what is happening with our case. Upon our own research, we understand that our insurance lawsuit with Erie Instance has been closed, due to negligence, on your part.
“Please contact us immediately to rectify this. If we do not he[ar] from you, this letter, a letter explaining our hardships, and letter explaining the irresponsibility of our lawyer, will be sent to The Attorney Grievance Committee. With or without you we are going forward.” (Emphasis added.)
Fretz failed to respond to plaintiffs’ letter. A primary area of dispute on the motion and cross motion is whether that letter constituted the making of a claim by plaintiffs against Fretz. Fretz has since submitted an affidavit in which he avers that, despite disregarding the letter and failing to forward it to St. Paul as a consequence of his severe depression at the time, he understood the letter at the time as making a claim against him for negligence and demanding that he correct his mistake by means of the payment of money.
Subsequently, plaintiffs retained attorney Roger P Doyle, Jr. to commence an action seeking damages from Fretz for his legal malpractice. On March 2, 2007, a few weeks prior to such commencement, Doyle sent Fretz a certified letter at his listed law office, demanding to know the identity of his malpractice insurance carrier or carriers and asking Fretz to place it or them on notice of a potential claim against him with regard to his handling of plaintiffs’ fire insurance claim. Fretz failed to respond to Doyle’s letter; indeed it was returned as undeliverable (Fretz having abandoned his law office).
*731 On March 26, 2007, the same day that he filed the summons and complaint against Fretz on behalf of plaintiffs, Doyle sent a second certified letter to Fretz at his home, again seeking the identity of his malpractice insurer, in order that Doyle himself might provide notice to the insurer and thereby avoid any prospect of disclaimer due to lack of notice. Again, Fretz did not respond.
On April 9, 2007, Doyle sent a third certified letter to Fretz’ home, proclaiming it “absolutely imperative” that Fretz supply Doyle with the name of Fretz’ insurer. Once again, Fretz failed to respond.
On April 24, 2007, Doyle sent a fourth certified letter to Fretz, attaching the summons and complaint in the malpractice action, and again pointing out how “imperative” it was that Fretz forward the summons and complaint to his malpractice insurer, lest he jeopardize his insurance coverage. Doyle further reiterated plaintiffs’ desire to independently provide the carrier with notice, again seeking the identity of the insurer for that purpose. Once again, Fretz failed to respond to that letter.
On May 8, 2007, about 10 days after Fretz had been personally served with the summons and complaint at his home, Doyle sent a fifth certified letter to Fretz’ home, once again “pleading” with Fretz to provide Doyle with the identity of the malpractice insurer so that appropriate notice could be given. Still, Fretz did not respond.
During this period, according to Doyle, he also made unsuccessful attempts to contact Fretz by telephone.
On May 23, 2007, plaintiffs moved by order to show cause for a court order directing Fretz to provide his insurance information to plaintiffs. In support of the motion, plaintiffs recounted that all of Doyle’s letters, phone calls and faxes had gone unanswered by Fretz. An order directing Fretz to provide his insurance information to plaintiffs was granted by this court on June 11, 2007 and was served upon Fretz at his home the next day.
On June 22, 2007, through the intervention of a lawyer contact who might be Fretz’ sister-in-law, Doyle received a copy of Fretz’ policy with St. Paul. That same day, Doyle sent a letter to St. Paul, enclosing the summons and complaint and thereby putting St. Paul on notice of plaintiffs’ malpractice claim against Fretz. Doyle further set forth in the letter that the claim of malpractice had been presented to Fretz directly by plaintiffs on *732 January 2, 2007 at a time when Fretz may have been “suffering a severe mental incapacity.” It is notable, however, that Doyle did not enclose plaintiffs’ January 2, 2007 letter to Fretz.
Also on June 22, 2007, apparently either by or on behalf of Fretz, a second copy of the summons and complaint in the malpractice action was forwarded to St. Paul. In an accompanying letter that this court does not have before it, St. Paul apparently was advised of Fretz’ claimed permanent mental disability during the policy period.
St. Paul responded to both of the June 22, 2007 letters on July 17, 2007, with one such response being sent to Doyle and the other being sent to Fretz. St. Paul’s letter to Fretz amounted to a disclaimer of coverage under the policy in question on the ground that, although plaintiffs’ claim against Fretz may have been made (as claimed in the Doyle letter) within the policy period by virtue of the January 2, 2007 letter, such claim had not been reported to St. Paul within the policy period or the 60-day “Extended Reporting Period,” as required by the policy. (St. Paul further disclaimed [or more accurately declined to relieve Fretz from the effect of the disclaimer] on the ground that Fretz’ claimed permanent mental disability had not been reported to St. Paul in writing within 60 days following the lapse of the policy.)
By its July 17, 2007 letter to Doyle (i.e., to plaintiffs), St. Paul made clear that it had disclaimed coverage of Fretz by means of a contemporaneous letter to Fretz, albeit for reasons that it was declining to reveal to Doyle.
St. Paul further communicated with Fretz by its subsequent letters of July 3 and October 7, 2008. The July 3 letter is not before this court. The October 7, 2008 letter, which notably was not sent until after the institution of this declaratory judgment action, represented St. Paul’s attempt to add a new and additional basis for disclaimer, i.e., that plaintiffs’ letter to Fretz of January 2, 2007 (of which letter St. Paul had apparently only recently obtained a copy) did not in fact constitute the making of a claim by plaintiffs against Fretz within the policy period, as required in order to give rise to coverage under the policy.
The Resolution
If the court were limited to evaluating the timeliness of the notice given to St. Paul on behalf of Fretz, there would be no question as to the validity of St. Paul’s disclaimer of coverage. As outlined in St. Paul’s disclaimer letter to Fretz, the essential *733 condition of coverage, i.e., that any claim have been reported to St. Paul within the policy period or within the 60-day extension period, was not met. For plaintiffs, therefore, the case hinges on whether (as contended by St. Paul) they have no more rights than Fretz under the policy, or whether (as contended by plaintiffs) they have the independent rights conferred by Insurance Law § 3420 (a). In pertinent part, that statute provides:
“§ 3420. Liability insurance; standard provisions; right of injured person
“(a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors: . . .
“(3) A provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.
“(4) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.”
The fundamental question is whether the instant policy insuring Fretz against liability for attorney malpractice is a “policy or contract insuring against liability for injury to person” within the meaning of Insurance Law § 3420 (a). St. Paul says that it is not, relying on a decision of the Federal District Court in Sirignano v Chicago Ins. Co. (192 F Supp 2d 199, 206-207 [SD NY 2002]). The court cannot accept that contention for several reasons. First, Sirignano was concerned with the applicability to a malpractice insurance policy of Insurance Law § 3420 (d)— which pertains to the timeliness of a disclaimer by an insurer of a liability for “death or bodily injury” arising out of an “accident” — not the discernibly distinct provisions of section 3420 *734 (a), which are by no means limited to “accident” insurance. The same is true with regard to various New York cases cited by St. Paul on this question on the applicability of section 3420 (see e.g. Boyle v Siddo, 54 AD3d 988, 989 [2d Dept 2008]; Iafallo v Nationwide Mut. Fire Ins. Co., 299 AD2d 925, 926-927 [4th Dept 2002]; Fairmont Funding v Utica Mut. Ins. Co., 264 AD2d 581 [1st Dept 1999]). This case has nothing to do with section 3420 (d).
Second, while the decisions of the lower federal courts on questions of New York law are not without precedential value, they are not binding on this court, certainly not in the same sense and to the same extent as decisions of the Appellate Division, especially the Fourth Department. In support of its argument that section 3420 (a) applies to this policy, plaintiffs are able to cite the Fourth Department’s decision in Romano v St. Paul Fire & Mar. Ins. Co. (65 AD2d 941 [4th Dept 1978]). Like the case at bar, Romano was an insurance dispute arising out of an underlying action for legal malpractice in which the defendant attorney defaulted and in which the insurer, coincidentally St. Paul, refused to indemnify defendant on the underlying liability on the ground that the insurer had not received timely notice of the malpractice claim and the commencement of the underlying action. The lower court granted summary judgment to the insurer on the grounds of such untimely notice. On appeal, however, the Fourth Department reversed, holding that Insurance Law § 167 (1) (d) — the predecessor to Insurance Law § 3420 (a) (4) — gave the underlying malpractice plaintiff the right to give independent notice of the occurrence and claim to the insurer (see Romano, 65 AD2d at 943). The Fourth Department further held that it could not be concluded as a matter of law that the underlying malpractice plaintiff did not exercise reasonable diligence in attempting to ascertain the identity of the insurer, and that there were questions of fact as to the exercise of such diligence (see Romano, 65 AD2d at 944).
In seeking to have this court disregard the holding of Romano, St. Paul argues that the Fourth Department in Romano failed to discuss whether the malpractice coverage under the policy in that case excluded coverage for bodily injury, as the instant policy does. However, whether the Fourth Department discussed it or not, the policy at issue in Romano did in fact exclude from its malpractice coverage any claims for bodily injury (as plaintiffs have demonstrated here by researching the record in Romano and adducing the policy at issue therein), and *735 yet the Fourth Department nonetheless held that the predecessor statute to section 3420 (a) applied to that case. In any event, the issue under the statute is not whether there was or is excluded from the malpractice coverage any claims arising out of “bodily injury,” but rather whether the policy as a whole is one insuring against liability for “injury to person” (Insurance Law § 3420 [a]). The instant policy does in fact cover claims of “personal injury,” notwithstanding its exclusion for claims of “bodily injury.” As quoted above (supra at 729), the basic coverage of the policy extends to claims for damages arising out “of error, omission, negligent act or ‘personal injury’, in the rendering of or failure to render ‘legal services’ for others by” the insured. The policy additionally contains a definition of “personal injury” that excludes “bodily injury” (thereby proving that the two concepts are mutually exclusive under the policy) but that includes injuries arising out of false arrest or imprisonment, malicious prosecution, wrongful eviction, defamation, or oral or written publication of material that violates someone’s right of privacy. In that regard, the policy contains a definition of “personal injury” that significantly tracks the statutory definition of “personal injury” set forth in General Construction Law § 37-a. This court sees no basis for concluding that the concept of “injury to person” set forth in Insurance Law § 3420 (a) does not overlap with: (a) the concept of “personal injury” set forth in General Construction Law § 37-a and (b) the concept of “personal injury” set forth in the coverage provision of the St. Paul policy. In that regard, it is simply untenable for St. Paul to contend that the policy in this case is not one “insuring against liability for injury to person” within the meaning of section 3420 (a). It is thus untenable for St. Paul to argue in this case — and certainly no more tenable than it would have been for St. Paul to have argued before the Appellate Division in Romano — that the policy does not come within the compass of the Insurance Law. In reaching that conclusion, this court notes that if Insurance Law § 3420 (a) does not apply, then it is doubtful that plaintiffs can even maintain this action against their former attorney’s insurer, because plaintiffs’ very right to bring the action is one conferred by section 3420 (a) (2) (see also § 3420 [b] [1]). Notably, St. Paul has abjured any contention that the entire action must be dismissed for plaintiffs’ supposed lack of standing under Insurance Law § 3420 (a) (2).
Having determined the applicability of Insurance Law § 3420 (a) (2), it remains for this court to determine the validity *736 of St. Paul’s disclaimer under the policy. St. Paul now contends that it validly disclaimed coverage under the policy on two grounds: first, that no claim was made during the policy period; and second, that no claim was reported to St. Paul during the policy period or the 60-day extension period. The problem for St. Paul is that only the second of those disclaimer grounds was articulated in St. Paul’s July 17, 2007 disclaimer letter to Fretz. The pertinent paragraph of the letter stated that St. Paul was denying Fretz any defense and indemnity in the malpractice action on the ground that “this ‘Claim’ was neither reported to St. Paul during the ‘Policy Period,’ nor was the ‘Claim’ or your disability reported within the 60 days following the date of the St. Paul Policy’s” lapse. It is of course a fundamental principle of the law in this realm that an insurer’s attempt at disclaimer is strictly limited to those grounds articulated in the notice of disclaimer, and that a ground not raised in a disclaimer letter may not be later asserted by the insurer (see General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979]; City of Kingston v Harco Natl. Ins. Co., 46 AD3d 1320, 1321 [3d Dept 2007]; Benjamin Shapiro Realty Co. v Agricultural Ins. Co., 287 AD2d 389 [1st Dept 2001]; see also Wraight v Exchange Ins. Co., 234 AD2d 916, 917-918 [4th Dept 1996] [where insurer disclaimed coverage based solely upon its insured’s failure to provide timely notice, insurer is subsequently estopped from raising the injured party’s allegedly untimely notice as a defense in the declaratory judgment action]). Indeed, St. Paul’s July 17, 2007 letter explicitly assumed, based on Doyle’s representations, that the claim was first made against the insured on January 2, 2007, within the policy period. The court understands that St. Paul entertained that assumption without having seen the January 2, 2007 letter, but St. Paul’s own lack of reasonable investigation into the circumstances is not a ground for departing from the aforementioned principle that the insurer is strictly limited to those disclaimer grounds articulated in the letter of disclaimer (see 2540 Assoc. v Assicurazioni Generali, 271 AD2d 282, 284 [1st Dept 2000] [“as a matter of policy, reasonable investigation is preferable to piecemeal disclaimers”]; see also DiGuglielmo v Travelers Prop. Cas., 6 AD3d 344, 346 [1st Dept 2004], lv denied 3 NY3d 608 [2004]). Contrary to St. Paul’s contention, enforcement of the rule that an insurer’s attempt at disclaimer is strictly limited to those grounds articulated in the notice of disclaimer does not involve the creation of coverage where none would otherwise exist. St. Paul’s belated attempt to supplement *737 its disclaimer letter to Fretz by adding or resurrecting the “claim not timely made” disclaimer ground — an attempt not made until October 7, 2008, after the commencement of this declaratory judgment action by plaintiffs and indeed following the interposition of St. Paul’s answer and counterclaim asserting only that the malpractice claim had not been timely reported — cannot avail for obvious reasons, both procedural and substantive.
With respect to the articulated ground for disclaimer, it is clear that Fretz failed to report the claim to St. Paul within the policy period or the 60-day extension period. However, the validity of the disclaimer as against plaintiffs must be determined in light of plaintiffs’ rights under Insurance Law § 3420 (a). It is well established that when an insured fails to give an insurer timely notice of an occurrence, the injured party has the independent right to provide such notice, thereby preserving the injured party’s right to proceed directly against the insurer on the basis of any eventual unsatisfied judgment against the insured (see Insurance Law § 3420 [a] [3]; Lauritano v American Fid. Fire Ins. Co., 3 AD2d 564, 567-568 [1st Dept 1957], affd 4 NY2d 1028 [1958]; Allstate Ins. Co. v Marcone, 29 AD3d 715, 717 [2d Dept 2006]; Potter v North Country Ins. Co., 8 AD3d 1002 [4th Dept 2004]; Wraight, 234 AD2d at 917). By the combined effect of Insurance Law § 3420 (a) (3) and (4), notice given on behalf of the injured person is tantamount to notice given on behalf of the insured, and any delay by the former in giving notice within the time prescribed in the policy “shall not invalidate any claim made by the insured ... or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and [further shown] that notice was given as soon as was reasonably possible.” (Insurance Law § 3420 [a] [4].) Notice given by an injured party “is not to be judged by the same standards, in terms of time, as govern notice by the insured, since what is reasonably possible for the insured may not be reasonably practical for the injured person” (Jenkins v Burgos, 99 AD2d 217, 221 [1st Dept 1984]; see Allstate Ins. Co., 29 AD3d at 717). Thus, the injured party’s reasonable time within which to give notice is measured from when he or she obtained sufficient information to enable him or her to provide notice or from when, through the exercise of due diligence, the injured party should or could have obtained such information (see generally Tower Ins. Co. of N.Y. v Lin Hsin Long Co., 50 AD3d 305, 308-309 [1st Dept 2008]; Ameri *738 can Home Assur. Co. v State Farm Mut. Auto. Ins. Co., 277 AD2d 409, 410 [2d Dept 2000]; see also GA Ins. Co. of N.Y. v Simmes, 270 AD2d 664, 666-667 [3d Dept 2000] [the issue is “(e)xactly when (the injured party’s) attorney became aware that plaintiff was (the tortfeasor’s) insurer or — with more diligence — should have known of plaintiffs status”]; Jenkins v Burgos, 99 AD2d 217, 221 [1984] [“where the injured person proceeds diligently in ascertaining coverage and in giving notice, he is not vicariously charged with any delay by the (in)sured”]; Allstate Ins. Co. v Moon, 89 AD2d 804, 805 [4th Dept 1982] [the issue is whether injured party gave notice “as soon as reasonably possible in light of the circumstances after insurance coverage was known or should have been known” (emphasis added)]). The injured party has the burden of proving that he or she, or counsel, acted diligently in attempting to ascertain the identity of the insurer and thereafter expeditiously notified the insurer (see American Home Assur. Co., 277 AD2d at 410).
Here, as a matter of law, plaintiffs acted diligently in an attempt to garner the relevant insurance information from Fretz. Thus, as a matter of law, plaintiffs did not unduly or unreasonably delay in reporting the claim to St. Paul (see American Continental Props, v National Union Fire Ins. Co. of Pittsburgh, 200 AD2d 443, 446 [1st Dept 1994]). Plaintiffs reported the making of the claim to St. Paul on June 22, 2007, the very day on which they were informed of St. Paul’s identity as Fretz’ malpractice insurer. The period of delay to be examined with reference to plaintiffs’ asserted diligent efforts is the period from March 15, 2007, the end of the 60-day extension period, until June 22, 2007, when notice was given to St. Paul. During that period alone, more particularly on March 26, April 9, April 24, and May 8, 2007, plaintiffs’ then attorney Doyle sent four certified letters to Fretz, repeatedly emphasizing the importance of notice being given immediately to his malpractice insurance carrier and pleading with Fretz to reveal the name of such carrier so that plaintiffs could exercise their independent right to give such notice. Those letters were in addition to an unspecified number of telephone calls made for the same purpose. In each instance, the mentally incapacitated Fretz failed to respond to the letter or telephone call. Doyle was reduced to asking this court for an order compelling Fretz to disclose the identity of his carrier, and only then were plaintiffs made aware of that identity. Those various attempts by Doyle were a follow-up to his earliest certified letter of March 2, 2007, in *739 which Doyle likewise sought to have Fretz provide him with the identity of his carrier and place that carrier on notice of the malpractice claim. That plaintiffs first undertook and were thwarted in those efforts to discover the identity of the insurer before March 15, 2007, at a time when it would have been possible for them to comply with the requirements of the policy, demonstrates their due diligence as a matter of law.
Accordingly, the motion of plaintiffs is granted in part, to the extent of adjudging and declaring that the denial of coverage by St. Paul is not operative as against plaintiffs and further adjudging and declaring that St. Paul must indemnify defendant Fretz for the underlying liability to the extent called for by the policy.

. All references herein are to Lawyers Professional Liability Policy number 560JB7396, by which St. Paul insured Fretz against claims for malpractice, not to an earlier policy issued by Travelers and also referenced in St. Paul’s disclaimer letter.

. “[Djamages” is defined by the policy as including “compensatory damages” but as excluding “punitive or exemplary damages, fines, sanctions, *729 penalties, equitable relief or the return or reimbursement of fees for ‘professional legal services’ whether or not rendered.”