TRAVELERS INDEMNITY COMPANY OF ILLINOIS A/S/O Partnership 1995 LLP., Plaintiff,

v.

F & S LONDON PUB, INC., and Donald Schauder d/b/a F & S London Pub, Defendant(s).

No. CV–01–1351(TCP)(ETB).

United States District Court, E.D. New York.

July 3, 2003.

Gregory John Ligelis, Robinson & Cole, LLP, New York City, for Plaintiff.

Kevin P. Smith, Law Offices Of Robert Stutman, New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court are two motions for summary judgment: (1) Plaintiff Travelers Indemnity Company of Illinois a/s/o Partnership 1995 LLP ("Plaintiff" or "Travelers") moves this Court for summary judgment on all aspects of its Complaint; and (2) Defendants F & S London Pub, Inc. and Donald Schauder d/b/a F & S London Pub (collectively "Defendants" or "F & S") cross-move this Court for summary judgment.

For the reasons stated below, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

## BACKGROUND

The parties submitted a very brief Joint Statement of Undisputed Facts pursuant to Local Rule 56.1. The parties stipulate to the following facts:

Plaintiff is an Illinois corporation duly authorized and licensed to write insurance and conduct business in the State of New York. Partnership 1995 LLP is a limited liability partnership; Building Associates, Inc. is the general partner and Lloyd Goldman is the limited partner (collectively "Goldman"). Goldman owns the property at issue in this action, which is located at 508–510 Walt Whitman Road, Melville, New York ("the Property").

At all relevant times, F & S occupied the bar/restaurant portion of the Property pursuant to a written lease dated September 1, 1982 ("the Lease").[1] F & S operated a bar and restaurant known as the F & S London Pub ("the Pub") on a parcel of the Property. Pursuant to the terms of the Lease, F & S was the tenant and Goldman was the landlord.

On May 15, 1999, a fire occurred at the Pub ("the Fire"). A subsequently filed police report stated the Fire started at 5:06 am in the area of the disc jockey booth. After inspection by the fire marshal, the cause of the Fire remained undetermined and no fault has been allocated to either party.

Prior to May 15, 1999, Travelers issued a property insurance policy, Policy No. KTJCMB–122D9520 ("the Policy"), pursuant to which Travelers insured Goldman for the damages being claimed herein. The Policy was in full force and effect at all times relevant to this action. Goldman duly made a claim under the Policy for damages sustained as a result of the Fire after complying with any and all conditions precedent to the receipt of payment under and pursuant to the terms of the Policy. Goldman claimed damages in the amount of $167,534.91 for property loss and $27,485.44 in building interruption loss, and Travelers awarded him the same.

After May 15, 1999, Travelers demanded payment from F & S for damages resulting from the Fire. F & S claimed that it was not responsible under the terms of the Lease for the damages caused by the Fire and refused to compensate Travelers.

---

1. Paragraphs one (1) through thirty-five (35) of the Lease constitute a standard form lease. Paragraphs thirty-six (36) through eighty-four (84) are contained in a rider attached to the form lease.

Thereafter, Travelers brought the instant action against F & S to recover monies paid to Goldman pursuant to the Policy. Travelers is subrogated to the rights of Goldman against F & S.

### DISCUSSION

**A. Standard for Summary Judgment**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

The standard is the same for courts considering cross-motions for summary judgment in which both parties assert an absence of any genuine issue of material fact. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Natural Res. Def. Council v. Evans*, 254 F.Supp.2d 434, 438 (S.D.N.Y.2003) (citing *Morales*, 249 F.3d at 121).

**B. Cross–Motions for Summary Judgment**

The gravamen of Travelers' Complaint is as follows: The Lease required F & S to return the Property in good condition and to indemnify Goldman for any damage to the Pub incurred during the Lease term. Although the cause of the Fire was never determined, and therefore no fault was levied against F & S, Plaintiff claims that indemnity clauses contained in the Lease place the risk of loss for the Property squarely on F & S. Because the Lease required that F & S return the premises to Goldman in good condition, and given that the Fire completely destroyed the Pub and surrounding structure, Plaintiff argues that F & S must compensate Travelers for the full amount of damages paid to Goldman.

■ Travelers claims it is entitled to recover damages as Goldman's subrogee. *See Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581, 626 N.Y.S.2d 994, 650 N.E.2d 841 (1995) (citations omitted) ("Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss.") (citations omitted). It is common for commercial leases in New York to contain a waiver of subrogation clause, which precludes the landlord's insurer from pursuing damages against the tenant once the insurer has fully performed on its policy with the landlord. *E.g.*, *Liberty Mutual Ins. Co. v. Perfect Knowledge, Inc.*, 299 A.D.2d 524, 752 N.Y.S.2d 677, 678 (2002); *Gap, Inc. v. Red Apple Companies, Inc.*, 282 A.D.2d 119, 725 N.Y.S.2d 312, 315–316 (2001). Such waivers are particularly important to protect tenants in leases containing broad indemnity clauses, which could potentially allocate liability to the tenant regardless of the tenant's negligence. *See* Milton R. Friedman, *Landlords, Tenants and Fires—Insurer's Right of Subrogation*, 43 Cornell L.Q. 225, 235 (1958) ("[L]iability without fault may exist where a covenant of indemnity is involved. It is not uncommon for a lease, particularly a long-term net lease, to contain an indemnity of the landlord by the tenant of all loss, damage or liability arising from the use or operation of the demised premises. This has

been held to give a landlord's insurer, who paid the loss, a right-over against the tenant regardless of the tenant's negligence.") (citations omitted). However, the Lease at issue here does not contain such a waiver of subrogation. Therefore this Court is presented with the unusual situation where a landlord's insurer seeks recovery from a tenant—based on both the absence of a waiver of subrogation clause and the presence of a broad indemnity clause—when no fault has been allocated to the tenant.[2]

An indemnity clause is a common mechanism by which parties place the risk of loss for leased property on one party. *St. Paul Fire & Marine Ins. Co. v. Protection Mutual Ins. Co.*, 644 F.Supp. 38, 39 (S.D.N.Y.1986). There are two clauses contained in the Lease—Clauses Two (2) and Forty (40)—which, read together, compel F & S to indemnify Goldman for all loss, liability or damage resulting from F & S's occupation of the premises.[3]

Defendants counter Plaintiff's arguments by claiming that the Lease does not require F & S to indemnify the landlord against the risk of *fire loss* under any circumstances, and particularly when such loss is unforeseen and not due to any act, fault or neglect on the part of F & S. F & S asserts that Plaintiff's interpretation of the Lease language would render the tenant an insurer of the landlord, a covenant not contemplated by the parties or reflected in the Lease agreement as a whole. Furthermore, Defendants argue that the terms of the Lease clearly allocate the risk of loss, particularly loss due to fire, to the landlord.

As Defendants highlight, Clause Four (4) of the Lease deals specifically with fire damage.[4] Defendants assert that, given

2. At oral argument, the parties agreed that there is a dearth of case law on the legal question herein presented, given that virtually all commercial leases in New York contain a waiver of subrogation clause.

3. Clause Forty (40) of the Lease provides, in relevant part:

> Tenant agrees to indemnify, defend, repay and save Landlord harmless from any and all claims, expense, liability or loss which Landlord may suffer or incur as a result of Tenant's violation of this Lease, *its use of the premises*, any failure of Tenant to act in accordance with this Lease, and/or because of any act or omission (or alleged act or omission) on the part of the Tenant.

(Lease ¶ 40) (emphasis added). Clause Two (2) of the Lease provides that F & S will:
> forever indemnify and save harmless the Landlord for and against any and all liability, penalties, damages, expenses and judgments arising from injury during said term to person or property of any nature, occasioned wholly or in part by any act or acts, omission or omissions of the Tenant, or of the employees, guests, agents, assigns or undertenants of the Tenant and *also for any matter or thing growing out of the occupation of the demised premises* or of the streets, sidewalks or vaults adjacent there-

to...[Tenant] *must quit and surrender the demised premises with all alterations, additions and improvements in good order and condition.*
(Lease ¶ 2) (emphasis added).

4. Clause 4 states, in relevant part:

> If the demised premises shall be partially damaged by fire or other cause without the fault or neglect of Tenant, Tenant's servants, employees, agents, visitors or licenses, *the damages shall be repaired by and at the expense of the Landlord*... But if such partial damage is due to the fault or neglect of Tenant,...the damages shall be repaired by Landlord but there shall be no apportionment or abatement of rent...*If the demised premises are totally damaged and are rendered wholly untenantable by fire or other cause, and if Landlord shall decide not to restore or not to rebuild the same, or if the building shall be so damaged that Landlord shall decide to demolish it or to rebuild it*, then or in any of such events Landlord may, within ninety (90) days after such fire or other cause, give Tenant a notice in writing of such decision...and thereupon the term of this lease shall expire...If Tenant shall not be in default under this lease then, upon the termination under the conditions pro-

the narrow language of Clause 4, the indemnity provisions contained in Clauses 2 and 40 cannot be read to encompass loss from fire. Furthermore, Clause Seventy-five (75) of the Lease states that if the Property is damaged by fire caused by the fault of the tenant, "the Tenant shall remain liable for the rent and additional rent for the balance of the term of the Lease had such Lease not prematurely terminated." (Lease ¶ 75.) F & S argues that if the parties intended, in the event of fire, for F & S to be responsible for repairs—in addition to rent as stated in Paragraph 75—the Lease would have so stated.[5]

◼ Considering the aforementioned arguments, the main question before this Court is one of pure contractual interpretation. Travelers contends that since both parties are sophisticated business enterprises, the plain language of the indemnification clauses should govern. F & S counters that the indemnity clauses, if read as broadly as Travelers purports, conflict with the language contained in Clause 4 of the Lease, which specifically addresses loss from fire. It is black letter contract law "that where there is 'inconsistency between a specific provision of a contract and a general provision of a contract . . . the specific provision controls.'" *Madison 52nd Corp. v. Empire Trust Co.*, 12 A.D.2d 600, 208 N.Y.S.2d 466 (1960) (quoting *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 133 N.E.2d 688 (1956)); *accord* 11 Richard A. Lord, *Williston on Contracts*, § 32:10 (4th ed.1999).

Moreover, "[t]he Court must read the indemnification provision in conjunction with all other provisions in the agreement to avoid inconsistencies or an interpretation which would render another provision superfluous or without effect." *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 650 (S.D.N.Y.1999) (citing *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492–493, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)).

Paragraph 4 of the Lease would be rendered meaningless if the indemnity clauses were read to encompass any and all damage to the Property, regardless of fault. It is true that the Lease's language mandates indemnity by F & S "for any matter or thing growing out of the occupation of the demised premises" (Lease ¶ 2) or tenant's "use of the premises" (Lease ¶ 40). However, it is untenable that F & S is thereby forced to indemnify Goldman for every conceivable damage that could occur on the Property during F & S's tenancy. Travelers assumes that the Fire falls under the broad indemnity clause because it occurred during F & S's use of the premises. The Fire started in a general area of the Property controlled by F & S, in and around the disc jockey booth, at 5:06 am on May 15, 1999. The last patron allegedly left the Pub at 4:30 am that evening. Plaintiff therefore argues that the Fire grew out of F & S's occupation of the Property. However, this assumes liability on the part of F & S that is unsubstantiated. Perhaps the Fire stemmed

---

vided for in the sentence immediately preceding. Tenant's liability for rent shall cease as of the day following the casualty. Tenant hereby expressly waives the provisions of Section 227 of the Real Property Law and agrees that the foregoing provisions of this Article shall govern and control in lieu thereof. If the damage or destruction be due to the fault or neglect of Tenant the debris shall be removed by, and at the expense of, Tenant.

(Lease ¶ 4) (emphasis added).

**5.** Clause Sixty-seven (67) of the Lease further supports Defendants' contention that the parties contemplated that Goldman or Goldman's insurer would assume the risk of fire loss. Clause 67 states, "Tenant shall pay as additional rent, upon receipt of bills therefor from Landlord, any increase in fire insurance premiums that may be incurred by reason of the operation and occupancy by the Tenant."

from electrical wiring in the permanent fixtures or the walls of the Pub, neither of which were within the control or occupation of the tenant. The cause of the fire is undetermined, and F & S cannot be held liable for property damage that occurred based on nothing more than a broad indemnification clause when more specific language bears on the facts at hand. This is particularly true given that this is a subrogation action, where the landlord himself has already been fully compensated by Travelers. In this case, the insurance company—taking advantage of the rare situation where a lease does not include a waiver of subrogation clause—is pursuing compensation from the tenant for damages both parties stipulate were not the tenant's fault.

Perhaps the most compelling argument bolstering F & S's case is the somewhat ambiguous language of Clause 4 itself. It is true, as Plaintiff points out, that pursuant to the Lease the responsibility and cost for repair is allocated to the landlord only when the Pub is *partially* destroyed by fire, absent fault of the tenant. When the Pub is *completely* destroyed by fire, without fault of the tenant, Clause 4 is silent as to which party must bear the cost of damages. In such situations Clause 4 does give the landlord the choice whether or not to rebuild the premises and waives the tenant's liability for rent. Clause 4 also mandates that if the damage or destruction is due to the fault of the tenant, any debris shall be removed by and at the expense of the tenant. However, there is no specific language stating which party, absent fault, is responsible for damages

incurred when the Property is completely destroyed by fire. Given that the onus is on the landlord to bear the cost of rebuilding the premises when fire partially destroys the structure, assuming no fault on the part of the tenant, this Court sees no reason why the same should not apply when the Property is completely destroyed by fire.

An additional argument posited by Travelers is that F & S was required by Clause 52 of the Lease to carry its own liability insurance,[6] thereby effectively placing the risk of loss for damage to the Pub on F & S. Plaintiff argues that the broad indemnity language included in the Lease, along with the Defendants' responsibility to obtain liability insurance, indicate the parties' intention to allocate risk to F & S for damage occurring on the Property. Neither party makes any mention in their papers of F & S ever obtaining liability insurance as it was required to do pursuant to ¶ 52. However, at oral argument, upon questioning from this Court, Defendants' counsel admitted that his client had in fact obtained a general liability policy, that Defendants' counsel was being paid by that very insurance policy, and that F & S's insurance company had refused to pay Travelers any amount for damages stemming from the Fire. At oral argument, F & S's counsel claimed that Defendants' general liability policy has no bearing on this action, because F & S was never held responsible for the Fire. Given that the parties did not brief the issue of F & S's insurance policy, this Court may not take its apparent existence into consider-

---

6. Clause 52 of the Lease provides:

   Tenant agrees to obtain, maintain and provide for the benefit of Landlord throughout the term of this Lease (and any extensions thereof) Comprehensive General Liability Insurance with respect to the demised premises and the sidewalks and areas adjacent thereto, on an occurrence basis, which shall provide coverage for personal injury, property damage and contractual personal injury and property damage, in such amounts as may reasonably be required by Landlord from time to time, but not less than $500,000/$1,000,000 for personal injury and $100,000 for property damage. (Lease ¶ 52.)

ation when deciding the instant motions for summary judgment beyond inferring that F & S did not breach the Lease agreement by failing to obtain the requisite general liability policy as dictated by Clause 52.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment must be, and the same hereby is, DENIED, and Defendants' motion for summary judgment is GRANTED.

SO ORDERED.