CADE & SAUNDERS, P.C.
and William J. Cade,
Esq., Plaintiffs,

v.

CHICAGO INSURANCE COMPANY,
Defendant.

No. 1:02–CV–1203.

United States District Court,
N.D. New York.

March 2, 2004.

Carter, Conboy, Case, Blackmore, Maloney & Laird (Nancy E. May–Skinner, Esq., of counsel), Albany, NY, for Plaintiffs.

Steinberg & Cavaliere (Steven A. Coploff, Esq., of counsel), White Plains, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

In this action, plaintiffs Cade & Saunders, P.C. and William J. Cade, Esq.[1] are seeking a declaratory judgment that defendant, Chicago Insurance Company ("CIC"), has a duty to defend and indemnify them in the underlying legal malpractice action, *Nigro v. Cade & Saunders, P.C., et al.*, currently pending in the Supreme Court of New York, Albany County. CIC moves for summary judgment pursuant to Fed.R.Civ.P. 56, seeking (1) dismissal of the complaint with prejudice; and (2) a declaration that it does not have a duty to defend or indemnify plaintiffs (CIC's insureds) in the underlying malpractice action. The plaintiffs cross-move for summary judgment seeking a declaration to the contrary.

## Background

As Local Rule 7.1(3) requires, the parties submitted Statements of Material Facts. The following factual recitation is based upon the undisputed parts of those Statements.

### I. The Policy

On January 15, 2001, CIC issued a "claims-made policy" providing coverage to the plaintiff law firm from February 12, 2001 through February 12, 2002. Defendant's Statement of Material Facts ("Def.Statement") at ¶ 1; *see also* Affidavit of William J. Cade (Sept. 26, 2003), exh. 2 thereto at 1. Prior to that policy, the plaintiff law firm "was continuously insured by [CIC], from February 12, 1996[.]" Cade Aff. at 2, ¶ 7. In fact, the plaintiff firm continued to be insured by CIC through February 12, 2003. *Id.* Among others, plaintiff Cade and Kyran D. Nigro, an attorney with the plaintiff law firm, were listed as additional insureds on the firm's policy. *See* Cade Aff., exh. 2 thereto. That policy's notice provision, which is at the heart of the present motions, is set forth below.

### II. The Nigros' Personal Injury Action

On June 7, 1994, Joseph Nigro[2] was involved in an automobile accident. Def. Statement at ¶ 3 (citing Affidavit of James Klein (Aug. 29, 2003), exh. B thereto at 1). Apparently the automobile Mr. Nigro

---

1. Periodically throughout Cade & Saunders will be referred to as the "law firm" or the "plaintiff law firm," and the plaintiffs will be referred to jointly as "the insureds."

2. Joseph Nigro and his wife Laura are the uncle and aunt of attorney Kyran Nigro.

was driving was rear-ended while he was making a left hand turn onto a multi-lane highway. Klein Aff., exh. B thereto at 1. Joseph Nigro sustained personal injuries from that accident, including "a closed head injury for which [he] underwent significant neuropsychological treatment." *Id.*

Nearly a year later Mr. and Mrs. Nigro commenced a personal injury action against the driver/owner of the other car. *Id.* at 1 and 2. At that time the Nigros were being represented by the DeGraff, Foy, Holt–Harris & Kunz law firm, who had retained an accident reconstruction expert. Klein Aff., exh. B thereto at 2. However, "[s]hortly before Labor Day 1998," Mr. Nigro's wife contacted their nephew, Kyran D. Nigro, who at the time was an associate at the plaintiff law firm, regarding litigation of that personal injury action. *See id.* Sometime in September, 1998, the plaintiff law firm became trial counsel for the Nigros, with the DeGraff firm remaining as attorney of record. Through their new trial counsel, the Nigros elected not to use the expert who had previously been retained by the DeGraff firm. Def. Statement at ¶ 8 (citation omitted); and Plaintiffs' Response to Statement of Material Facts ("Pl.Response") at ¶ 8. Instead, plaintiffs opted to "hire [their] own reconstruction expert, Dr. Raymond Hagglund." Klein Aff., exh. B thereto at 2.

In the meantime, plaintiffs sought an adjournment. They did so after obtaining the DeGraff firm's file and also realizing that plaintiff Cade had a conflict with the scheduled trial date of October 19, 1998. *See id.* Defense counsel refused to consent to an adjournment however, and the court declined to grant such relief. *Id.* The trial judge denied an adjournment even though "the scheduling conflict as well as the size and complexity of the case, together with [plaintiffs'] recent involvement[ ]" were explained to him. *Id.*

The court declined to grant that adjournment at a conference which occurred on approximately September 23, 1998. *See id.* In a December 5, 2001 letter to CIC, attorney Nigro stated that while he did "not remember the specifics of the conversations" at that conference "regarding expert disclosure[,]" to his "knowledge" there was "no order in the case indicating any deadlines for the completion of discovery, including expert disclosure." *Id.* at 1–2. During this September time frame attorney Nigro recollects that the DeGraff firm did fax a proposed expert response to the plaintiff firm. *See id.* at 2. Attorney Nigro reiterated that the plaintiff firm was "uncomfortable with [the DeGraff firm's chosen] expert and w[as] taking steps to retain [its] own accident reconstruction expert for trial purposes." *Id.* at 3. According to attorney Nigro, "[a]t no time during this conversation did [the De-Graff attorney] mention any discovery deadlines with respect to expert disclosure, nor did he express to [Nigro] any concern about the timeliness of an expert response." *Id.*

Attorney Nigro proceeded to contact Dr. Hagglund directly, but was advised that Hagglund would not be available to view the accident scene until "the first week of October 1999[sic] [3], approximately ... 3 ... weeks before trial." *Id.* Dr. Hagglund was able to view the scene in that short time, but because he was subpoenaed for another trial out of state, he was "unable to provide [attorney Nigro] with his opinions until the weekend before trial." *Id.; see also* Def. Statement at ¶ 11 (citation omitted); and Plaintiffs' Response to Statement of Material Facts ("Pl.Re-

---

**3.** Presumably this is a typographical error and attorney Nigro meant 1998, as that is when most of the relevant events surrounding the malpractice action occurred.

sponse") at ¶ 8. During a telephone conversation between Hagglund and attorney Nigro, which took place over that weekend, Nigro "draft[ed] an expert response which [he] served on defense counsel on the morning of trial." Klein Aff., exh. B thereto at 3; *see also* Def. Statement at ¶ 12; and Pl. Response at ¶ 12. Defendants then made an oral motion to preclude Dr. Hagglund's testimony. The trial court granted that motion reasoning that the expert disclosure was untimely. *Id.* at 4; *see also* Klein Aff., exh. G thereto at 1.

Prior to trial, because plaintiff Cade could not try the Nigros' case due to other work commitments, the plaintiff firm contacted yet another law firm to act as trial counsel and they agreed to do so. *Id.* at 2 and 3. In addition to the unavailability of plaintiff Cade, different trial counsel was obtained because, according to attorney Nigro, he and Cade "thought it best that [Nigro] not try [the case] given [his] relationship with the [Nigros.]" *Id.* at 2. The trial proceeded as scheduled with the Nigros being represented by the law firm of Pennock & Breedlove. "The jury quickly returned a defense verdict." Def. Statement at ¶ 16 (citing Klein Aff., exh. B thereto at 5); and Pl. Resp. at ¶ 16.

On appeal, the Nigros again retained different counsel and the Appellate Division affirmed the trial court's preclusion order. In so doing, the Third Department "agreed with Supreme Court that plaintiffs made no showing of good cause for having retained their reconstruction expert more than three years after commencement of the action and a matter of just a few weeks prior to trial." Klein Aff., exh. G thereto at 2; and Pl. Resp. at ¶ 21. Based upon that reasoning, the Appellate Division found that the trial court did not abuse its discretion in granting the defendants' motion to preclude the testimony of the Nigros' accident reconstruction expert. *See id.* at 2.

Plaintiff Cade became aware of the defense verdict in the Nigros' personal injury action a day or so later, in October 1998, but as he testified during his deposition, he did not become aware of the preclusion order until "some months after the trial." Def. Statement at ¶ 17 (quoting Klein Aff., exh, E thereto); and Pl. Resp. at ¶ 17. It was not until October 18, 2001, however, when he received a letter from another law firm indicating that it was looking into "a potential legal malpractice claims against the plaintiff firm[,]" that Cade became aware that the Appellate Division had affirmed the trial court's issuance of the preclusion order. Klein Aff., exh. H thereto at 1. Plaintiffs readily admit receipt of that letter; and "[o]n October 24, 2001, [plaintiffs] first notified CIC of a potential claim." Def. Statement. at ¶¶ 22–23 (citing Klein Aff., exhs. H and I thereto); and Pl. Resp. at ¶¶ 22 and 23. By letter dated November 1, 2001, CIC responded to the forwarded correspondence by, *inter alia,* "reserv[ing] the right to disclaim coverage at a later date should [it] determine that the Insured . . . failed to provide [CIC] with timely notice of the claim as required by the policy or immediately forward to [CIC] any demand, notice or summons or other process received which constitutes a Claim." Klein Aff., exh. J thereto.

### III. The Present Action

On January 4, 2002, plaintiffs were served with the summons and complaint in the underlying legal malpractice action. Klein Aff., exh. M thereto; Def. Statement at ¶ 25; and Pl. Resp. at ¶ 25. By letter dated January 18, 2002, CIC denied coverage of the Nigros' malpractice action against plaintiffs, and that is not disputed. *See* Def. Statement at 4, ¶ 26 (citing Klein Aff., exh. L thereto); and Pl. Resp. at ¶ 26. Roughly six and a half months later, the insureds commenced this declaratory

judgment action in State Supreme Court, Albany County. On approximately September 11, 2002, CIC removed the case based upon diversity jurisdiction because plaintiffs are New York residents and CIC is an Illinois resident. *Id.* at 4–5, ¶ 27; and Pl. Resp. at ¶ 27. "On October 4, 2002 CIC served an answer denying the material allegations of the complaint and asserting an affirmative defense based on late notice of a potential claim." *Id.* at 5, ¶ 29 (citing Klein Aff., exh. O thereto); and Pl. Resp. at ¶ 29. There is no challenge to removal, and obviously this court has diversity jurisdiction here.

### Discussion

Presently before the court are cross-motions for summary judgment pertaining to the broad issue of whether or not CIC has a duty to defend and indemnify the plaintiff insureds in the underlying legal malpractice action. The standards for summary judgment motion are well established and there is no need to repeat the same herein. *See* Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The standard is the same for . . . cross-motions for summary judgment in which both parties assert an absence of any genuine issue of material fact[,]" which is the situation here. *See Travelers Indemnity Co. of Ill. v. F & S London Pub,* 270 F.Supp.2d 330, 332 (E.D.N.Y.2003) (citing *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001)). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Id.* (internal quotation marks and citation omitted). It is against this procedural backdrop which

the court will consider the pending cross-motions.

In this diversity action the substantive law of the forum state applies. *See Wolfson v. Wolfson,* No. 03 Civ. 0954, 2004 WL 224508, at *3 (S.D.N.Y. Feb.5, 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Therefore, the court will apply New York law.

In New York, "compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability." *American Insurance Co. v. Fairchild Industries, Inc.,* 56 F.3d 435, 438 (2d Cir.1995) (citation omitted). Therefore, "[i]f an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend or indemnify the insured." *Id.* (citation omitted); *see also Fein v. Chicago Insurance Co.,* No. 01 Civ. 11386, 2003 WL 21688239, at *5 (S.D.N.Y. July 18, 2003) (citation omitted) (Timely notice is critical because an insured's failure to provide same "is generally a complete defense to actions against the insurer for coverage.") "The burden is on the insured to show that a delay was reasonable under the circumstances." *Id.* (citation omitted). Thus in the present case as the party claiming timely notice, the plaintiff insureds bear the burden of proof.

Section IX of the legal malpractice policy which CIC issued to the plaintiff law firm, entitled "conditions," provides in relevant part:

Upon the **Insured** becoming aware of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which could reasonably be expected to be the basis of a **Claim** covered hereby, written notice shall be given by the **Insured,** or its representative to the Com-

pany together with the fullest information obtainable as soon as practicable. If **Claim** is made or suit is brought against the Insured, the **Insured** or its representative shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative.

Klein Aff., exh. A thereto at 9 (emphasis in original). In looking at identical language from another CIC policy, Judge McMahon accurately noted that this provision contains two separate notice requirements. "The first sentence comprises the condition requiring timely notice of a *potential* claim, while the second sentence refers to notice of an actual claim or suit." *Sirignano v. Chicago Insurance Co.*, 192 F.Supp.2d 199, 202 (S.D.N.Y.2002) (emphasis added) (citation omitted). These "policy conditions are unambiguous and comport with most attorney's professional liability policies." *Id.* (citation omitted).

In the present case, there is no dispute as to the "notice of an actual claim or suit" condition. By letter dated October 18, 2001, attorney Cade was advised that the Nigros had consulted another law firm "relative to a potential legal malpractice claim against [his] firm arising out of the loss of their personal injury claim." Klein Aff., exh. H thereto. Less than a week later, by letter dated October 24, 2001, the plaintiff law firm advised CIC of the Nigros' potential claim, *see id.*, exh. I thereto; and CIC is not challenging the timing of that notice. Rather, the focus of these motions is upon whether the insureds complied with the first provision, requiring timely notice of a *potential* claim. This situation presents an issue as to when the policy's notice provision was triggered. *See Crucible Materials Corp. v. Aetna Casualty & Surety Co.*, 228 F.Supp.2d 182, 193 (N.D.N.Y. July 6, 2001) (internal quotation marks and citation omitted) (in deciding the issue of timely notice under an insurance policy, "[f]irst, the court must decide when an insured's obligation to give notice accrued[ ]").

"Under New York law, an insured must provide notice 'within a reasonable time *under all circumstances.*'" *Fein*, 2003 WL 21688239, at *5 (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir.1992)) (emphasis added). In this Circuit it is well-settled that "[a]n insured must provide notice to the insurer upon discovery of facts and circumstances that would lead an objectively reasonable person to believe in the possibility of a claim." *Id.* (citing, *inter alia, Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987)). "Reasonability appears to pertain to both whether the insured party should have been able to recognize that an occurrence could give rise to liability and whether upon such discovery, the insured notified the insurer within a reasonable time." *Id.* (internal quotation marks and citation omitted). "As the ... Second Circuit recently explained, 'a good-faith belief by the insured that an incident does not trigger coverage under its insurance policy' may excuse a seeming failure to give timely notice.'" *Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc.*, No. 03 Civ. 1420 JGK, 2003 WL 22999464, at *8 (S.D.N.Y. Dec.22, 2003) (quoting *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir.2003)) (other citation omitted). Ordinarily "[w]hether a delay is reasonable is an issue of fact, but courts may find a delay unreasonable as a matter of law if no excuse is given or if the excuse is not credible." *Id.* (citing, *inter alia, Green Door Realty*, 329 F.3d at 287).

CIC contends that as a matter of law the insureds did not provide timely notice of the Nigros' potential malpractice claim because the insureds were on notice of same in October 1998 when the court

granted the defense motion to preclude the testimony of the Nigros' accident reconstruction expert. From CIC's point of view the issuance of that preclusion order, "based on the lawyers' failure to timely serve an expert witness response and the insureds' awareness of same[,] ... trigger[ed] the[ ] [insureds'] obligation to report this matter to CIC." Def. Reply at 5.

If the insureds' obligation was not triggered then, apparently based upon the deposition testimony of plaintiff Cade,[4] CIC asserts that "at most" the insureds should have been aware of the preclusion order "several months" after the issuance of same. See Klein Aff. at 2 ¶ 3. In light of the foregoing, and relying upon the October 24, 2001 law firm's letter, CIC contends that plaintiffs failed to notify it of the Nigros' malpractice claim until "almost three years" after the preclusion order. See id. Thus, CIC reasons, "as a matter of law, the insureds fail[ed] to comply with [§ IX's] ... notice of condition[,]" hence relieving CIC of its obligation to defend and indemnify the insureds in the underlying malpractice action. Id.

In opposing CIC's summary judgment motion, the insureds contend that CIC did not meet its burden of proof because, "at a minimum," there are factual issues as to "the reasonableness of the belief by [the plaintiff law firm] that a claim would not be brought." Pl. Memo. at 7 (citations omitted); see also Pl. Reply at 4. This assertion is somewhat troubling because, as will be seen, it contradicts plaintiffs' position that, as a matter of law, they could "not reasonably [have] expect[ed] preclusion of the expert to be a basis for a malpractice claim." Id. at 5. In any event, the insureds also are raising an issue which CIC did not—prejudice. The insureds assert that because CIC has shown no prejudice, the court must deny CIC's

motion and grant the insureds' cross-motion.

Turning next to plaintiffs' cross-motion for summary judgment, they offer three reasons as to why they should prevail on that motion. First, the insureds argue the relative merits of that action contending that the plaintiff law firm "did not commit a negligent act, error or omission." Pl. Memo. at 3. Instead, the insureds depict their actions as "ma[king] a strategic choice to pursue one reasonable course of action (seeking a trial adjournment and retaining a new expert) over another course of action (using an expert that counsel was not comfortable with for trial)." Id. at 3–4. In a similar vein, as to plaintiff Cade, the insureds invoke the policy's "Waiver of Breach Conditions," arguing that he is "entitled to *coverage* as he did not personally commit or participate in the alleged malpractice." Pl. Memo. at 10 (emphasis added); and Pl. Reply at 7 (emphasis added).

Second, directly addressing the notice issue, the plaintiff law firm contends that it "had a good faith belief that a [malpractice] claim would not be made by the Nigros." Pl. Memo. at 5. To establish such belief the insureds rely upon several parts of the record. Among other things, they point to attorney Nigro's affidavit wherein he avers, *inter alia,* that because of his "close familial relationship with the Nigros[,]" he "had a good faith belief that the[y] would not sue[.]" Nigro Aff. at ¶ 9. In a similar vein, at his deposition plaintiff Cade was asked, "[W]hat, if any, steps did you take once you learned of the Preclusion Order?" Cade Aff., exh. 1 thereto at 20, l. 17–18. He replied, "I don't think that I did anything. I had no reason to believe that a family member would sue their nephew." Id. at 19–21. In relying

---

4. CIC did not provide or cite to that deposition, although plaintiffs did. This assertion is in the form of an attorney affidavit submitted by CIC.

upon that close familial relationship, attorney Nigro avers that he talked with the Nigros about the preclusion order and they "understood that (1) [the trial judge's] Order precluding ... expert testimony ... was discretionary ...; (2) [the plaintiff firm] acted as quickly as practicable in retaining a trial expert after they were retained as trial counsel in mid-September, 1998; and (3) [the plaintiff firm/plaintiff] did not commit malpractice in representing the Nigros." Nigro Aff. at ¶ 8.

Third, the law firm maintains that it did give timely notice because, in accordance with the policy terms, it gave such notice "as soon as practicable." Pl. Memo. at 7. From plaintiff's perspective, that timely notice occurred when less than a week after learning that the Nigros had contacted another law firm regarding a potential malpractice action, it advised CIC of same in the October 24th letter. For all of these reasons, plaintiffs are seeking a declaration that CIC has a duty to defend and indemnify them in the underlying malpractice action.

In opposing plaintiffs' cross-motion, CIC broadly asserts that "the insureds' have proffered no legally cognizable excuse for their failure to timely report this matter to CIC[.]" Def. Reply at 5. In particular, as to the familial relationship between Kyran and the Nigros, CIC retorts that that exception to the notice requirement cannot be sustained as a matter of law because " 'in an attorney-client context, the parties' relationship is irrelevant in determining the viability of an excuse for late notice.' " *Id.* at 7 (quoting *Sirignano*, 192 F.Supp.2d at 206 n. 3). CIC further responds that it was not objectively reasonable for plaintiffs to believe that the Nigros would not sue them, and thus they cannot rely upon that belief to "excuse their failure to timely notify CIC of the potential claim." *Id.* at 8.

Characterizing as "ludicrous" plaintiffs' argument that they gave notice as soon as practicable, CIC reiterates its initial position that notice given after a three year delay is not "as soon as practicable[.]" *Id.* CIC also challenges the insureds' view that it must show prejudice to disclaim coverage based upon late notice. According to CIC, that "is a misstatement of the current state of New York law[.]" *Id.* at 9. Finally as to plaintiff Cade, CIC suggests that under the policy's waiver provision, upon which he is relying to circumvent any duty he may have had to notify CIC as to the Nigros' malpractice action, Cade, like his firm, was "personally subject to the notice condition[ ]" when he learned of the preclusion order " 'some months after the trial[.]' " *Id.* at 12.

■ Looking objectively at all of the facts and circumstances as established on this record regarding whether plaintiffs "reasonably could or should have concluded" that there was a "possibility of a claim" here, *see Crucible Materials Corp.*, 228 F.Supp.2d at 193 (internal citations and quotation marks omitted), it cannot be said as a matter of law that either CIC or the insureds are entitled to summary judgment on this issue. To be sure, as CIC is quick to point out, "[s]tate and federal courts have held relatively short delays in providing notice of an actual or potential claim to violate [insurance] requirement[s]." *See Chicago Insurance Co. v. Borsody*, 165 F.Supp.2d 592, 599 (S.D.N.Y. 2001) (citations omitted). Those courts have variously held that delays ranging from ten days to one or two months did not provide timely notice to the insurers. *See id.* (and cases cited therein).

CIC's reliance upon this line of cases is misplaced because they are easily distinguishable from the facts before the court at this time. For example, in *Borsody*, the court held that where the insured failed to

notify the insurer until 40 days after service of a cross-claim upon him, that notice was untimely under the terms of a policy requiring the insured to " 'immediately' forward to [the insurer] every demand, notice, summons, or other process received." *Borsody,* 165 F.Supp.2d at 598. Importantly, unlike the present action, in *Borsody* neither the triggering event nor the date thereof was at issue. Also, that case involved notice of an actual claim, as opposed to a potential claim. What is more, as just mentioned, the *Borsody* policy required immediate notice whereas plaintiffs' policy required notice "as soon as practicable." That distinction is significant because "policy provisions mandating immediate notice ... set[ ] forth an iron-bound requirement, in contrast to policy provisions providing a more elastic standard." *Id.* at 598–99 (internal quotations marks and citations omitted).

*Sirignano,* another case upon which CIC is relying also is readily distinguishable from the present action. There, as the district court recognized, "it could not be clearer that plaintiff failed timely to advise CIC of a potential claim[ ]" given the state court's dismissal of a case as abandoned where the insured attorney did "nothing to restore th[at] case to the calendar within the 1–year period allowed by [the] CPLR[.]" *Sirignano,* 192 F.Supp.2d at 204. The court reasoned that "[p]laintiff's knowledge of that dismissal was alone sufficient to create the reasonable expectation of a malpractice claim." *Id.* (citations omitted). Obviously, plaintiffs' notice obligation is not so clear in this case. It is far easier to see how the insured attorney in *Sirignano* should have had a "reasonable expectation of a malpractice claim[ ]" where he had abandoned his client's lawsuit, than it is here where the judge in the personal injury action made a discretionary ruling to preclude expert testimony.

Likewise, *Martinson v. Massachusetts Bay Insurance Co.,* 947 F.Supp. 124 (S.D.N.Y.1996), stands in stark contrast to the present case. The insured laundromat owners in *Martinson* were seeking, among other things, a declaration of coverage in the underlying action for environmental cleanup involving alleged negligent disposal of hazardous substances. In *Martinson* there were several factors which the court found, especially when "viewed together, would have suggested to a reasonable person the possibility of a claim[.]" *Id.* at 131 (internal quotation marks omitted). In particular, "before ... even receiv[ing] the ... complaint, the [plaintiffs] and their attorneys received three separate notifications that they might be held liable for damages resulting from the improper disposal of [hazardous substances.]" *Id.* at 131. What is more, the *Martinson* plaintiffs did not "immediately" notify the insurer, as that policy required, until 14 months after receiving the complaint. It is that fact which the *Martinson* court found dispositive. *See id.* at 131.

The facts here are vastly different than those before the *Martinson* court. In sharp contrast to *Martinson,* here, the plaintiff insureds did not receive even one notification, much less three, that they were "Potentially Responsible Parties" (or any such language) with respect to the Nigros' malpractice action. Further, the plaintiff insureds notified CIC of the malpractice action even *before* service, as opposed to 14 months *after* service as did the *Martinson* plaintiffs. Thus, as with the other cases upon which CIC is relying to establish late notice as a matter of law, *Martinson* does not support such a finding in this case.

On the other hand, evaluating CIC's summary judgment motion independently of plaintiffs', as the court must, *Travelers Indemnity,* 270 F.Supp.2d at 332, argu-

ably it was *un*reasonable for the plaintiffs to believe that a potential malpractice claim could not result from the discretionary issuance of a preclusion order. Several aspects of the record support such an argument. It is reasonable to infer, for example, that the Nigros' accident reconstruction expert was a very important aspect of their case. This inference can be drawn from the fact that the Nigros' predecessor counsel had obtained such an expert. Additionally, when the Nigros' appellate counsel moved for enlargement of time in which to perfect their appeal, in his supporting affidavit attorney Nigro averred that an accident reconstruction expert was "necessary" because "Mr. Nigro," as a result of the injuries sustained in the accident, could not present a clear picture of the facts surrounding the wreck." Klein Aff., exh. C thereto at ¶ 3. The Nigros' appellate brief echoes the necessity of such an expert, stating that "[t]his was the only direct proof available to [them] to prove [the] negligence of the other driver, since Joseph Nigro had no memory of the accident at trial." *Id.*, exh. D thereto at 1.

Preclusion, from the Nigros' standpoint, "decimated a strong liability case." *Id.* Furthermore, the jury did quickly return with a defense verdict. For these reasons and others, CIC concludes "[t]here can be no doubt that the confluence of an adverse verdict and a pivotal preclusion order (which resulted, in whole or in part, from the insured's delay in serving an expert response), would have prompted a reasonable insured to give notice of a potential claim." Def. Memo. at 6.

Despite the foregoing, viewing the insureds' cross-motion independently of CIC's, arguably a reasonable and prudent person could reach the opposite conclusion, *i.e.* that he would not be liable for legal malpractice due to the granting of a preclusion order. And, as with CIC's argument, there are record facts to support this argument as well. Plaintiff Cade's affidavit is particularly relevant. In that affidavit Cade specifies six "bases for [his] reasonable belief and the reasonable belief of [attorney] Nigro, that a [malpractice] claim would not be made by the Nigros[.]" Cade Aff. at 8–9, ¶ 35. Those "bases" include Cade's view that "the preclusion of an expert in a motor vehicle negligence case is not fatal to the cause of action[.]" *Id.* at 8, ¶ 35(a). Cade also accurately avers that "not every defense verdict is wrong[.]" *Id.* at 8, ¶ 35(b). Furthermore, according to plaintiff Cade, "the liability was difficult in the underlying case as plaintiff Nigro turned left into the defendant's path of travel[.]" *Id.* (citation omitted). Cade also notes that "CPLR 3101(d)(1) [the basis for the trial court's ruling] is discretionary and the decision by [the plaintiff firm] to retain a different expert and seek an adjournment of the trial was a strategic judgment and did not constitute malpractice." *Id.* at 9, ¶ 35(f) (citation omitted).

Attorney Nigro's affidavit provides further insight into the circumstances from which the Nigros' malpractice claim eventually arose. As mentioned earlier, attorney Nigro points to the plaintiff firm's retention of an expert "as quickly as practicable ... after [it] w[as] retained as trial counsel in mid-September, 1998[,]" and in attorney Nigro's opinion, the Nigros' "understood" that. Affidavit of Kyran Nigro (Sept. 24, 2003) at ¶ 8(2). As mentioned earlier, it was also attorney Nigro's impression that the Nigros "understood" the discretionary nature of the trial court's preclusion ruling *and* that plaintiffs "did *not* commit malpractice in representing the[m]." *Id.* at ¶ 8(1) and (3) (emphasis added).

The foregoing recitation of the parties' respective arguments and the record proof

which could support either demonstrates the fact specific nature of the notice issue. Thus, the court finds, as have a number of other courts when faced with the same issue, that the issue of notice cannot be resolved on a summary judgment motion, regardless of whether it is the insurer or the insured making that motion. *Chicago Insurance Company v. Halcond, RN*, 49 F.Supp.2d 312 (S.D.N.Y.1999), is illustrative. There, the court denied the insurer's motion for summary judgment finding that "[t]he question whether a claim reasonably could have been foreseen simply [could] not [have] be[en] decided on [that] motion." *Id.* at 319. More specifically, the court found "a triable issue of fact with respect to whether [the insured] was aware, prior to the commencement of the suits, of any incident which reasonably could have been expected to result in a claim[.]" *Id.* The court added, "[T]here is a triable issue as to whether [the insured] had any obligation to give notice of the incidents[.]" *Id.*

*Halcond* is not a legal anomaly. In *Genova v. Regal Marine Industries, Inc.*, 309 A.D.2d 733, 765 N.Y.S.2d 266 (2003), which required, as does the present case, notice "as soon as practicable[,]" the Second Department affirmed the trial court's denial of the insurer's summary judgment motion because there were "[t]riable issues of fact ... as to whether the ... insured timely notified the [insurer] of the ..., occurrence in accordance with the terms of the policy and whether it demonstrated the existence of a reasonable and good faith belief in its nonliability." *Genova*, 765 N.Y.S.2d at 267 (citations omitted); *see also Robustelli v. Chicago Insurance Company*, 288 A.D.2d 456, 733 N.Y.S.2d 885 (2nd Dep't 2001) (internal quotation marks and citations omitted) (lower court erred in granting summary judgment to insurer on issue of timely notice where the plaintiff insured "raised a triable issue of fact as to whether he had a good-faith belief of nonli-

ability[ ]"); and *Rosenberg & Estis, P.C. v. Chicago Insurance Company*, Index No. 600938/02, 2003 WL 21665680, at *3 (Sup. Ct., N.Y. July 11, 2003) ("[g]enerally, the timeliness of notice presents an issue of fact ... which cannot be resolved on motion papers alone[ ]"). "The obligation to give notice as soon as practicable of an occurrence that may result in a claim is measured by the yardstick of reasonableness." *Paramount Insurance Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 743 N.Y.S.2d 59 (2002) (internal quotation marks and citations omitted). However, at this point in the current litigation and based upon the present state of the record, which does not seem to be fully developed on the notice issue (*e.g.* there is nothing as to the Nigros' version of events), the court cannot say, as a matter of law, whether or not it was reasonable for plaintiffs to believe that granting of the preclusion order could potentially give rise to a legal malpractice claim, thus implicating their duty to timely notify CIC.

Having found that summary judgment is not appropriate in favor of either the insured or the insurers, several other issues which these motions raise become irrelevant, at least at this juncture. There is no need, for example, to address plaintiff Cade's argument that he had no individual involvement in the alleged malpractice action. After all, resolution of the notice issue also impacts him. Likewise, at this point, there is no need to address the issue, which the insurers are raising, of whether an insurer claiming untimely notification must show prejudice.

For the reasons set forth above, the court hereby:

(1) DENIES the motion by defendant Chicago Insurance Company, for summary judgment dismissing the complaint with prejudice and declaring that CIC has no duty to defend or indemnify the plaintiff

insureds in the action entitled *Joseph F. Nigro, et ano v. Cade & Saunders, P.C., et ano,* pending in the Supreme Court of the State of New York, County of Albany, Index No. 6369/0; and

(2) DENIES the cross-motion for summary judgment by plaintiffs Cade & Saunders, P.C. and William J. Cade, Esq., seeking a declaration that defendant CIC has a duty to defend and indemnify plaintiffs in the state court action referenced in the preceding paragraph.

IT IS SO ORDERED.